ELDON S. EDSON (SBN CA 168896)
eedson@selmanlaw.com
LAURA R. RAMOS (SBN CA 186326)
lramos@selmanlaw.com
SELMAN, LEICHENGER, EDSON, HSU,
NEWMAN & MOORE LLP
11766 Wilshire Blvd., Sixth Floor
Los Angeles, CA 90025-6546
Telephone:   310.445.0800
Facsimile:    310.473.2525

Attorneys for Plaintiff,
NAUTILUS INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, an Arizona Corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>NULIFE MULHOLLAND, LLC; JOHN DAVID MEINTS JR. aka JD MEINTS, an individual; NULIFE WELLNESS GROUP, LLC; NULIFE RECOVERY, LLC; DAKOTA J. PIKE, an individual<br><br>  Defendants. | Case No. 2:23-CV-00126<br><br>NAUTILUS INSURANCE COMPANY'S COMPLAINT FOR:<br><br>(1) DECLARATORY RELIEF-NO DUTY TO DEFEND;<br>(2) DECLARATORY RELIEF-NO DUTY TO INDEMNIFY;<br>(3) DECLARATORY RELIEF-NOT INSUREDS<br>(4) REIMBURSEMENT OF DEFENSE COSTS |

Plaintiff NAUTILUS INSURANCE COMPANY ("NAUTILUS") complains as follows:

## THE PARTIES

1. NAUTILUS is a corporation incorporated under the laws of the State of Arizona, with its principal place of business in the State of Arizona.

2. NULIFE MULHOLLAND, LLC ("NULIFE MULHOLLAND") is a California limited liability company whose members are citizens of California.

3. NULIFE MULHOLLAND is, as of the filing of this complaint, a suspended company by the California Secretary of State and/or the Franchise Tax Board.

1

4. NULIFE MULHOLLAND has filed for bankruptcy; however NAUTILUS has obtained an order from the bankruptcy court granting it relief from the bankruptcy stay to file this action.

5. NULIFE WELLNESS GROUP, LLC is a California limited liability company whose members are citizens of California.

6. NULIFE WELLNESS GROUP, LLC is, as of the filing of this complaint, a suspended company by the California Secretary of State and/or Franchise Tax Board.

7. NULIFE RECOVERY, LLC, is a California limited liability company whose members are citizens of California.

8. NULIFE RECOVERY, LLC is, as of the filing of this complaint, a suspended company by the California Secretary of State and/or the Franchise Tax Board.

9. JOHN DAVID MEINTS, JR. aka JD MEINTS ("MEINTS") an individual, is a citizen of California and resides in Los Angeles County.

10. MEINTS is the agent for service of process for NULIFE MULHOLLAND and NULIFE WELLNESS GROUP.

11. DAKOTA J. PIKE ("PIKE") an individual, is a citizen of California.

12. PIKE is named as a party to this suit to ensure that she is bound by any determination as to coverage regarding her suit styled *Dakota J. Pike v. Nulife Wellness Group, LLC, et al.*, Los Angeles County Superior Court Case No. 19STCV00665 ("UNDERLYING ACTION") filed against other defendants herein.

13. At all times herein mentioned, some of the defendants were the agents, servants, employees, or partners of one or more of the other defendants, and at all relevant times herein, were acting in the course and scope of said agency or employment.

3892 47092 4869-0825-1709 .v1

## JURISDICTION AND VENUE

14. This court has personal jurisdiction over the defendants as each is a citizen of California and/or does business in this judicial district.

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between plaintiff and defendants.

16. As provided by 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, this Court has authority to declare the rights and obligations of the parties under the terms and provisions of the insurance policy at issue in this lawsuit. Plaintiff seeks a declaration of rights under a contract.

17. Plaintiff also seeks monetary damages in excess of $75,000.

18. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that one or more defendants reside and/or do business in this district and judicial division.

## THE NAUTILUS POLICY

19. NAUTILUS issued to named insured NULIFE MULHOLLAND LLC a Commercial General Liability Policy Number NN829342, effective June 20, 2017 to June 20, 2018 ("NAUTILUS POLICY"). A true and correct copy of the NAUTILUS POLICY is attached as **Exhibit A**.

20. The NAUTILUS POLICY provided under Section I – Coverages an Insuring Agreement for Coverage A which states, in relevant part:

> "COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.

However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

. . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . . "

21. The NAUTILUS POLICY contains an "Exclusions" provision for Coverage A which read in pertinent part as follows:

"2. Exclusions

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . . "

22. The NAUTILUS POLICY provided under Section I – Coverages an Insuring Agreement for Coverage B which states, in relevant part:

"COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured

against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . ."

23. The NAUTILUS POLICY contains a "Who is an Insured" provision which read in pertinent part as follows:

"SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

…

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

24. The NAUTILUS POLICY contains the following Definitions:

"SECTION V – DEFINITIONS

\*\*\*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from these at any time.

\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same

general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"."

25. The NAUTILUS POLICY contains an Endorsement excluding coverage for designated professional services that reads in pertinent part:

EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

PART

SCHEDULE

<u>Description Of Professional Services</u>

1. Any and all professional services of the named insured.

. . .

The following exclusion is added to 2. Exclusions of Section I: With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service."

26. The NAUTILUS POLICY contains an Endorsement excluding coverage for punitive or exemplary damages the reads in pertinent part:

EXCLUSION—PUNITIVE OR EXEMPLARY

DAMAGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . .

The following exclusion is added to 2. Exclusions of Section I:

This insurance does not apply to punitive or exemplary damages.

## THE UNDERLYING ACTION

27. On or about January 10, 2019, PIKE filed a complaint in the UNDERLYING ACTION against MEINTS, NULIFE MULHOLLAND, NULIFE WELLNESS GROUP, LLC, and NULIFE RECOVERY, LLC (collectively, the "NULIFE DEFENDANTS"). A true and correct copy of the Complaint in the UNDERLYING ACTION is attached as **Exhibit B**.

28. The UNDERLYING ACTION sets forth the following causes of action against each of the NULIFE DEFENDANTS: (1) Negligence, (2) Intentional Infliction of Emotional Distress, (3) Battery, (4) Sexual Battery, (5) Breach of Fiduciary Duty, (6) Sexual Harassment, (7) Negligence Per Se, (8) Concealment.

29. The UNDERLYING ACTION alleges that in December 2017, PIKE checked into a "NuLife Treatment Center" (the "Treatment Center"), a residential detoxification facility licensed by the California Department of Health Care Services and operated by the NULIFE DEFENDANTS for treatment of her opioid addiction. (**Exhibit B**, ¶ 11.)

30. The Complaint's first cause of action, for negligence, alleges injury as a result of negligent care, treatment, and diagnosis by the NULIFE

DEFENDANTS.

31. The Complaint alleges that PIKE subsequently began a relationship with MEINTS and engaged in sexual conduct to which PIKE was unable to consent, causing her to suffer injury.

32. The Complaint alleges that "MEINTS impliedly and/or expressly held himself out to the public as a licensed therapist and counselor who provided counseling services in connection with alcohol and other drug recovery treatment programs, including the programs offered at the treatment center…held himself out to be part of [PIKE]'s clinical treatment team, even after [PIKE] left the [facility]… MEINTS would make insights, suggest behaviors, suggested treatment strategies, and basically practicing psychology and counseling without a license. This continued even after PIKE left the Treatment Center… MEINTS even took part in decisions regarding medication and all of the key aspects of [PIKE's] treatment… However, MEINTS was doing this without the facility adequately training or monitoring him both while Plaintiff was at the facility and afterword." (**Exhibit B**, ¶ 12.)

33. The Complaint alleges that MEINTS and the NULIFE DEFENDANTS "knew, or should have known, by virtue of their professional education, training, and experience, that [PIKE] was emotionally and physically vulnerable, and was particularly susceptible to being influenced, manipulated, and abused by persons like MEINTS, and that MEINTS'S failure to exercise due care in the performance of his care and treatment of [PIKE] would cause [PIKE] severe emotional distress." (**Exhibit B**, ¶ 13.)

34. The Complaint alleges that MEINTS and the NULIFE DEFENDANTS negligently and carelessly treated, diagnosed, and cared for PIKE so as to proximately cause her physical and mental condition to worsen. (**Exhibit B**, ¶ 14.)

35. The Complaint alleges that the negligent and careless treatment by

3892 47092 4869-0825-1709 .v1

MEINTS and the NULIFE DEFENDANTS "constitute actions and omissions below the standard of care in the community and exist wholly and separately from the sexually inappropriate acts alleged in other parts of her complaint" and are not "incidental to the sexual contact, sexual battery, or sexual exploitation." (<u>Exhibit B</u>, ¶ 15.)

36. The Complaint alleges "as a result of the conduct of MEINTS and the NULIFE DEFENDANTS, [PIKE]'s physical and mental conditions worsened, causing her severe emotional distress, physical injury, permanent mental injury, and other general damages." (<u>Exhibit B</u>, ¶ 17.)

37. The Complaint alleges that "because of the position of authority and trust occupied by defendant MEINTS and the nature of the counseling and the transference phenomenon, Plaintiffs [sic] were induced to place special trust and confidence in defendant MEINTS with respect to the course of the treatment." (<u>Exhibit B</u>, ¶ 49.)

38. The Complaint alleges that "MEINTS used his powers and abilities as a counsel[or], and his knowledge and background to engage in sexual contact and sexual touching with Plaintiff while knowing that she had the type of background and the type of emotional difficulty that would make her vulnerable to this type of sexual touching." (<u>Exhibit B</u>, ¶ 35.)

39. The Complaint alleges that "MEINTS deliberately pursued [her] by words and actions, and by an abuse of the transference phenomenon with a deliberate course of conduct on [MEINTS's] part toward [PIKE] which was designed to cause her to succumb to [MEINTS's] sexual advances. Had [PIKE] not been suffering from her emotional problems, and if the emotional problems had not been aggravated by [MEINTS], she would have never permitted or consented to such sexual contact by [MEINTS], resulting in sexualized counseling and sexual acts between the two of them." (<u>Exhibit B</u>, ¶ 35.)

40. The Complaint alleges that PIKE "did not consent to this sexualized

touching and sexual contact, and in fact was not able to consent to it, because of the nature of the transference phenomenon." (**Exhibit B**, ¶ 36.)

41.     The Complaint alleges that MEINTS and the NULIFE DEFENDANTS prescribed suboxone and kept her on the drug for longer than she was initially told, and the suboxone " made her feel like she was "in a fog uncertain, unsafe, and vulnerable." (**Exhibit B**, ¶ 22.)

42.     The Complaint alleges "while [PIKE] was heavily medicated, MEINTS began flirting with [her] and grooming [her] into for what would end up being a sexual relationship… paying her extra attention starting early in her stay, attending her group and individual therapy sessions where he provided comments and advise throughout." (**Exhibit B**, ¶ 23.)

43.     The Complaint alleges that MEINTS later, "confronted [PIKE] and professed his feelings for her." (**Exhibit B**, ¶ 24.)

44.     The Complaint alleges that MEINTS and PIKE began communicating through secret and sexually explicit letters that expressed MEINTS's "love" for PIKE, and referred to PIKE by various pet names. (**Exhibit B**, ¶ 24.)

45.     The Complaint alleges that within days of beginning to exchange secret and sexually explicit letters, MEINTS sent an employee to PIKE's room to summon PIKE to MEINTS's office, where they engaged in sex after MEINTS told PIKE that they "needed to have sex to be sure of their attraction to each other." (**Exhibit B**, ¶ 25.)

46.     The Complaint alleges that after an employee discovered the above-referenced letters, MEINTS told PIKE to "cut off all ties with any other relationships," and that he would "protect her and provide for her." (**Exhibit B**, ¶ 27.)

47.     The Complaint alleges that MEINTS then "arranged for [PIKE] to be discharged… then paid for her to live in various AirBnB rentals and hotel rooms" where MEINTS would "stop by" to have sex with PIKE. (**Exhibit B**, ¶ 27.)

48. The Complaint alleges PIKE cut ties with MEINTS after MEINTS informed that he could not get PIKE an apartment. (**Exhibit B**, ¶ 28.)

49. The Complaint alleges that the "sexual misconduct as described above was not part of therapy," and " existed wholly and separately from the treatment relationship." (**Exhibit B**, ¶¶ 38, 45.)

50. The Complaint alleges that "MEINTS failed to act to protect [PIKE] from harm, and acted in a way to cause [PIKE] harm by placing his interests ahead of the safety and well-being of [PIKE]," which constituted "a breach of fiduciary relationship that existed" between PIKE and the NULIFE DEFENDANTS. (**Exhibit B**, ¶ 52.)

51. The Complaint alleges that MEINTS engaged in the unlicensed practice of medicine "particularly by effectively prescribing Suboxone for [PIKE]." (**Exhibit B**, ¶64.)

52. The Complaint alleges MEINTS engaged in the unlicensed practice of psychology. (**Exhibit B**, ¶66.)

53. The Complaint also alleges MEINTS engaged in the unlicensed practice of clinical social work, the unlicensed practice of professional clinical counseling, and conduct that, had MEINTS been licensed would have constituted unprofessional conduct. (**Exhibit B**, ¶¶ 68, 70.)

54. The Complaint alleges "MEINTS intentionally concealed his lack of licensure as a therapist, psychology, or drug and/or addiction counselor. Despite this, he participated in her care and treatment … so as to lead PIKE to believe MEINTS was, in fact, licensed and therefore competent to diagnose and treat her. In fact,  MEINTS's real intent was to groom and/or manipulate [PIKE], and thereafter seduce her into a sexual relationship with him." (**Exhibit B**, ¶ 79.)

55. The Complaint alleges "MEINTS intended that [PIKE] rely on the appearance of his being a licensed professional, and further intended to deceive [PIKE] by concealing his true intentions. (**Exhibit B**, ¶ 80.)

56. The Complaint alleges that the NULIFE DEFENDANTS knew of MEINTS's conduct giving rise to PIKES claims for Intentional Infliction of Emotional Distress, Battery, Sexual Battery, Breach of Fiduciary Duty, Sexual Harassment, Negligence Per Se, and Concealment "and adopted and/or approved of it after it occurred." (**Exhibit B**, ¶¶ 33, 41, 47, 55, 61, 77, 84.)

57. The Complaint seeks punitive damages from MEINTS and the NULIFE DEFENDANTS, since "MEINTS's conduct was malicious, oppressive, despicable, and fraudulent because he disregarded his patient's health and safety; because he knew that she was particularly vulnerable; and because he acted with trickery and deceit, among other reprehensible conduct." (**Exhibit B**, ¶¶ 33, 41, 47, 55, 61, 77, 84.)

**Nautilus' Reservation of Rights**

58. On or about January 21, 2020, NAUTILUS agreed to defend NULIFE MULHOLLAND in the UNDERLYING ACTION under a reservation of rights.

59. On or about February 6, 2020, NAUTILUS agreed to defend MEINTS in the UNDERLYING ACTION under a reservation of rights.

60. NAUTILUS also issued a supplemental reservations of rights to NULIFE MULHOLLAND and MEINTS regarding the UNDERLYING ACTION.

61. NAUTILUS reserved the right, among other things, to seek reimbursement for defense of uncovered claims and seek a declaration from a court regarding the rights under the policy.

62. Because NULIFE MULHOLLAND is a suspended company, NAUTIUS has intervened in the Underlying Action.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief—No Duty to Defend as to ALL Defendants)**

63. NAUTILUS re-alleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

64. NAUTILUS contends that the UNDERLYING ACTION does not raise any potential for coverage under the NAUTILUS POLICY.

65. The UNDERLYING ACTION is not covered as no "bodily injury" or "property damage" caused by an "occurrence" are alleged as required to create a potential for coverage under Coverage A.

66. Additionally, and to the extent "bodily injury" is alleged, claims in the UNDERLYING ACTION are not covered as the "bodily injury" was expected or intended by the insureds such that the injury is excluded from coverage under an exclusion.

67. Claims in the UNDERLYING ACTION are also not covered as the professional services exclusion applies to exclude coverage under Coverage A.

68. Claims in the UNDERLYING ACTION are not covered under Coverage B as none of the enumerated offenses constituting "personal and advertising injury" are alleged as required for coverage under the Coverage B.

69. NAUTILUS is informed and believes, and based thereon alleges, that defendants dispute NAUTILUS' contentions.

70. NAUTILUS seeks a judicial declaration that it has no duty to defend the UNDERLYING ACTION and a judicial declaration that it has the right to withdraw from the defense of defendants MEINTS and NULIFE MULHOLLAND in that action.

71. As such, an actual justiciable controversy exists that requires a judicial declaration to determine the respective rights and obligations of the parties.

## SECOND CAUSE OF ACTION

**(Declaratory Relief- No Duty to Indemnify as to All Defendants)**

72. NAUTILUS re-alleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

73. NAUTILUS contends that it owes no duty to indemnify with respect to the UNDERLYING ACTION under the NAUTILUS POLICY as there is no

duty to defend the UNDERLYING ACTION, and if there is no duty to defend, there can be no duty to indemnify.

74. In addition, claims in the UNDERLYING ACTION are not covered because no "bodily injury" or "property damage" caused by an "occurrence" are alleged as required to create a potential for coverage under Coverage A.

75. Additionally, and to the extent "bodily injury" is alleged, claims in the UNDERLYING ACTION are not covered because the "bodily injury" was expected or intended such that the injury is excluded from coverage under the expected injury exclusion.

76. Additionally, and to the extent that "bodily injury" caused by an "occurrence" is alleged, claims in the UNDERLYING ACTION are not covered because coverage is excluded under the designated professional services endorsement.

77. Claims in the UNDERLYING ACTION are not covered because none of the enumerated offenses constituting "personal and advertising injury" are alleged as required for coverage under the Coverage B.

78. No coverage is owed for punitive damages sought in the UNDERLYING ACTION, as punitive damages are excluded from coverage under the Policy and coverage for punitive damages is prohibited by California law.

79. NAUTILUS is informed and believes, and based thereon alleges, that defendants dispute NAUTILUS' contentions and claim that NAUTILUS has a duty to indemnify the UNDERLYING ACTION under the NAUTILUS POLICY.

80. NAUTILUS seeks a judicial declaration that it has no duty to indemnify in the UNDERLYING ACTION under the NAUTILUS POLICY.

81. As such, an actual justiciable controversy exists that requires a judicial declaration to determine the respective rights and obligations of the parties.

3892 47092 4869-0825-1709 .v1

# THIRD CAUSE OF ACTION

**(Declaratory Relief – Defendants Do Not Qualify As Insureds as to NULIFE WELLNESS LLC and NULIFE RECOVERY LLC)**

82. NAUTILUS re-alleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

83. NULIFE WELLNESS and NULIFE RECOVERY are not named insureds on the NAUTILUS POLICY.

84. NULIFE WELLNESS and NULIFE RECOVERY do not qualify as "insureds" as that term is defined under the "Who Is An Insured" section of the NAUTILUS POLICY.

85. NULIFE WELLNESS and NULIFE RECOVERY are not members of the named insured NULIFE MULHOLLAND.

86. NAUTILUS is informed and believes, and based thereon alleges, that NULIFE WELLNESS and NULIFE RECOVERY dispute the assertion that they are not insureds.

87. NAUTILUS seeks a judicial declaration that NULIFE WELLNESS and NULIFE RECOVERY do not qualify as insureds under the NAUTILUS POLICY.

88. NAUTILUS seeks a judicial declaration that as these defendants do not qualify as insureds, that NAUTILUS does not owe insurance coverage to either for the UNDERLYING ACTION.

89. As such, an actual justiciable controversy exists that requires a judicial declaration to determine the respective rights and obligations of the parties.

# FOURTH CAUSE OF ACTION

**(Reimbursement of Defense Expenses as to Defendants MEINTS and NULIFE MULHOLLAND LLC)**

90. NAUTILUS re-alleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

91. Pursuant to California law, the UNDERLYING ACTION never presented a potential for covered liability.

92. NAUTILUS has provided a defense to MEINTS and NULIFE MULHOLLAND LLC in the UNDERLYING ACTION under a reservation of rights.

93. NAUTILUS reserved the right to seek reimbursement of sums expended pursuant to California law.

94. Under applicable law, NAUTILUS has the right to obtain full reimbursement directly from the insured(s) for all amounts NAUTILUS pays to defend the insured(s) but which were never owed as a matter of law, in an amount in excess of the jurisdiction of this court and according to proof plus pre-judgment and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, NAUTILUS prays for relief as follows:

A. On the first cause of action for declaratory relief as to the duty to defend, for a judicial declaration that NAUTILUS has no duty to defend in the UNDERLYING ACTION, and a judicial declaration that it may withdraw from the defense of the UNDERLYING ACTION;

B. On the second cause of action for declaratory relief as to the duty to indemnify under the NAUTILUS POLICY, for a judicial declaration that NAUTILUS has no duty to indemnify any of the defendants for UNDERLYING ACTION under the NAUTILUS POLICY.

C. On the third cause of action for declaratory relief as to insured status, for a judicial declaration that NULIFE WELLNESS and NULIFE RECOVERY do not qualify as insureds under the NAUTILUS POLICY and therefore NAUTILUS owes no coverage obligation for the UNDERLYING ACTION.

D. On the fourth cause of action for reimbursement of defense costs, for reimbursement for all amounts NAUTILUS paid in defense costs but never owed

in the UNDERLYING ACTION, including pre-judgment and post-judgment interest.

  E. For costs of suit herein;

  F. For pre-judgment and post-judgment interest; and

  G. For such other relief as the Court deems just and proper.

DATED: January 9, 2023

        SELMAN, LEICHENGER, EDSON, HSU, NEWMAN & MOORE LLP

        By: /s/ Laura R. Ramos
          ELDON EDSON
          LAURA R. RAMOS
        Attorneys for Plaintiff,
        NAUTILUS INSURANCE COMPANY