ELDON S. EDSON (SBN CA 168896)
eedson@selmanlaw.com
LAURA R. RAMOS (SBN CA 186326)
lramos@selmanlaw.com
DAVID S. ELSTNER (SBN CA 341156)
delstner@selmanlaw.com
SELMAN LEICHENGER EDSON HSU
NEWMAN & MOORE LLP
10880 Wilshire Blvd. Suite 1200
Los Angeles, CA 90025-6546
Telephone:  310.445.0800

Attorneys for Plaintiff,
 NAUTILUS INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, an Arizona Corporation,<br><br>Plaintiff,<br><br>v.<br><br>NULIFE MULHOLLAND, LLC; JOHN DAVID MEINTS JR. aka JD MEINTS, an individual; NULIFE WELLNESS GROUP, LLC; NULIFE RECOVERY, LLC; DAKOTA J. PIKE, an individual<br><br>Defendants. | Case No. 2:23-CV-00126-FMO-AGRx<br><br>Hon. Fernando M. Olguin<br><br>**PLAINTIFF NAUTILUS INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO JOHN DAVID MEINTS**<br><br>[Filed with Request for Judicial Notice; Declaration of Laura Ramos; Appendix of Exhibits;  Notice of Lodging of [Proposed] Order; Notice of Lodging of [Proposed] Judgment]<br><br>Date:    February 1, 2024<br>Time:    10:00 a.m.<br>Courtroom: 6D, 6th Floor<br><br>Complaint filed: January 9, 2023 |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 1, 2024 at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Fernando M. Olguin, located in Courtroom 6D, U.S. District Court for the Central District of California, First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Plaintiff,

1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Nautilus Insurance Company ("Nautilus"), will and hereby moves for an entry of default judgment in the captioned matter against Defendant John David Meints, Jr. ("Meints").

This is an insurance coverage suit with regard to coverage for an underlying action filed by Dakota Pike ("Pike") against Meints and others. The policy at issue was issued by Nautilus to NuLife Mulholland, LLC ("NuLife Mulholland") and NuLife Mulholland is the named insured. Defendant Meints only potentially qualifies as an insured under the policy as he was the CEO and sole managing member of the named insured company.

Nautilus is seeking judgment as to all parties in this matter. NuLife Mulholland is a suspended company and cannot appear in court. Default is pending as to NuLife Mulholland. A motion for summary judgment will be filed as to Pike, who is the underlying claimant. The parties are preparing the Joint Brief for that motion. Judgment has already been entered against NuLife Wellness, LLC and NuLife Recovery, LLC. [ECF 52.]

Nautilus seeks entry of Default Judgment on each claim against Meints:

1.     Nautilus first seeks to rescind the policy. If the policy is rescinded, then there is no coverage for the underlying action. Therefore, judgment is also warranted as to the causes of action for declaratory relief on the duty to defend and duty to indemnify, and reimbursement of defense costs.

2.     In the alternative, if the policy is not rescinded, Nautilus moves for partial judgment on the other claims such that there is no coverage for the underlying action under the terms of the policy and applicable law. Specifically, Nautilus moves for a default judgment as to the first cause of action for Declaratory Relief -No Duty to Defend, the second cause of action for Declaratory Relief- No Duty to Indemnify, and the third cause of action for Reimbursement of Defense Costs.

As stated above, at the same time it makes this motion, Nautilus is seeking summary judgment as to the same claims against the only active defendant in this

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

2

1    case, claimant Pike.   Nautilus will also be seeking entry of default judgment as to

2    NuLife Mulholland after the pending motion to allow service via the secretary of

3    state is granted.  Therefore, the Court will be positioned to enter judgment as to all

4    claims as to all remaining parties upon the hearing of the motions for default

5    judgment and the motion for summary judgment.

6        Nautilus makes this request for default judgment pursuant to FRCP 55(b)(2),

7    Local Rule 55-1, FRCP 58, and Local Rule 58-11.

8        This motion is based on this notice, the memorandum of points and authorities

9    herein, the declarations filed herewith, the evidence submitted, pleadings on file, and

10    on any other information deemed appropriate by the Court.

11

12    Respectfully submitted,

13    DATED: January 4, 2024        SELMAN LEICHENGER EDSON HSU
                                  NEWMAN & MOORE, LLP

14

15

16             By: /s/*Laura R. Ramos*
                                  ELDON S. EDSON

17                  LAURA R. RAMOS
                                  DAVID S. ELSTNER

18              NAUTILUS INSURANCE COMPANY

19

20

21

22

23

24

25

26

27

28

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3

3892 47092 4892-2982-3895 .v1

1
2

## TABLE OF CONTENTS

3  MEMORANDUM OF POINTS AND AUTHORITIES.......................................1

4  I.    INTRODUCTION.................................................................................1

5  II.   THE UNDERLYING ACTION...............................................................2

6  III.  PROCEDURAL HISTORY .....................................................................3

7
8  IV.   NAUTILUS IS ENTITLED TO A DEFAULT JUDGMENT...................3

9        A.   Rescission Of the Policy Is Required .................................................3

10            (1)   The Nautilus Policy Was Issued Based
                   Misrepresentations .................................................................6

11
12       B.   If the Policy Is Rescinded Judgment is Warranted On All
                   Claims .........................................................................................10

13
14       C.   The Professional Services Exclusion Bars Coverage For The
                   Underlying Action.......................................................................10

15
16            (1)   Injury Due to Sexual Misconduct Is Excluded
                   Under The Professional Services Exclusion.......................13

17
18            (2)   Pike's Alleged Injury Due to Non-Sexual
                   Misconduct Is An Excluded Professional Service.............14

19       D.   Coverage is Barred As All Conduct is Intentional .........................15

20
21            (1)   Sexual Misconduct Is Intentional and Does Not
                   Constitute an "Occurrence" ...............................................15

22
23            (2)   The Claim is Either From Noncovered Conduct
                   Under the Professional Services Exclusion or
24                 Inseparably Intertwined with Noncovered
                   Conduct ..................................................................................17

25       E.   Claim For Reimbursement.................................................................18

26  V.    DEFAULT JUDGMENT REQUIREMENTS HAVE BEEN MET.........18

27
28  VI.   NAUTILUS HAS MET THE CONDITIONS FOR A DEFAULT

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

i

3892 47092 4892-2982-3895 .v1

JUDGMENT ................................................................................................ 19

VII.    NAUTILUS HAS MET THE *EITEL* FACTORS ..................................... 20

1.    Prejudice to Plaintiff ........................................................... 20

2 & 3. Merits of Substantive Claims and Sufficiency of the Complaint ..................................................................... 20

4.    The Sum of Money at Stake in the Action ......................... 20

5.    Possibility of Dispute Concerning Material Facts ............. 21

6.    Excusable Neglect ............................................................... 21

7.    The Policy Favoring Decisions on the Merits ................... 22

VIII.   NAUTILUS'S REQUESTED RELIEF ...................................................... 22

IX.     CONCLUSION ........................................................................................ 23

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

3892 47092 4892-2982-3895 .v1

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Aldabe v. Aldabe*
    (9th Cir. 1980) 616 F.2d 1089.................................................................20

*Amex Assurance Co. v. Allstate Ins. Co.*
    (2003) 112 Cal.App.4th 1246................................................................12

*Antles v. Aetna Casualty & Surety Co.*
    (1963) 221 Cal.App.2d 438...................................................................12

*Begun v. Scottsdale Insurance Company, Inc*
    (N.D. Cal. 2013) 2013 WL 12077974....................................................12

*Blue Ridge Ins. Co. v. Jacobsen*
    (2001) 25 Cal. 4th 489..........................................................................19

*Brandt. v. Am. Bankers Ins. Co. of Fl.*
    (9th Cir. 2011) 653 F.3d 1108...............................................................22

*Burlington Insurance Company v. Bay One Security.*
    (N.D. Cal. 2018) 2018 WL 1730425.....................................................12

*Buss v. Superior Court*
    (1997) 16 Cal. 4th 35.............................................................................19

*Coca Cola. v. Columbia Cas.*
    (1992) 11 Cal.App.4th 1176.....................................................................5

*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*
    (1993) 14 Cal.App.4th 1595..................................................................16

*Commercial Underwriters v. Superior Court*
    (2000) 84 Cal.App.4th 181..............................................................12, 13

*Conlon v. U.S.*
    (9th Cir. 2007) 474 F.3d 616....................................................................8

*Cranford Ins. Co., Inc. v. Allwest Ins. Co.*
    (N.D. Cal. 1986) 645 F.Supp. 1440.......................................................13

*Cummings v. Fire Ins. Exchange*
    (1988) 202 Cal.App.3d 1407.....................................................................5

iii

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4892-2982-3895 .v1

*Eitel v. McCool*
   (9th Cir. 1986) 782 F.2d 1470 ......................................................20, 21, 22, 23

*Elektra Entertainment Group v. Crawford*
   (C.D. Cal. 2005) 226 F.R.D. 388 ...................................................................22

*Energy Ins. Mutual Limited v. Ace American Ins. Co.*
   (2017) 14 Cal.App.5th 281 ............................................................................18

*Essex Ins. Co. v. Yi*
   (N.D. Cal. 1992) 795 F. Supp. 319 ................................................................10

*Fair Housing of Marin v. Combs*
   (9th Cir. 2002) 285 F.3d 899 ...........................................................................6

*Freeman v. Allstate Life Ins.*
   (9th Cir. 2001) 253 F.3d 533 ...........................................................................5

*Garamendi v. Henin*
   (9th Cir. 2012) 683 F.3d 1069 .........................................................................6

*Geddes v. United Fin. Grp.*
   (9th Cir. 1977) 559 F.2d 557 ......................................................................6, 23

*Hollingsworth v. Com. Union Ins.*
   (1989) 208 Cal. App. 3d 800 ....................................................................11, 12

*Imperial Casualty. v. Sogomonian*
   (1988) 198 Cal.App.3d 169 C. ....................................................................3, 5

*Jane D. v. Ordinary Mutual*
   (1995) 32 Cal.App.4th 643 .............................................................................17

*LA Sound. v. St. Paul Fire & Marine*
   (2007) 156 Cal.App.4th 1259 .......................................................................4, 5

*Landstar Ranger, Inc. v. Parth Enters., Inc.*
   (C.D. Cal. 2010) 725 F. Supp. 2d 916 ...........................................................21

*Merchants Fire. v. Lattimore*
   (1949) 263 F. 2d 232 ........................................................................................5

*Mitchell v. United National*
   (2005) 127 Cal.App.4th 457 ....................................................................3, 4, 5

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

iv

*National Fire Ins. Co. of Hartford v. Lewis*
(D. Ariz. 2012) 898 F. Supp. 2d 1132 ................................................................ 13

*Nautilus Ins. Co. v. MV Transportation*
(2005) 36 Cal. 4th 643 ....................................................................................... 19

*Northern Insurance Co. v. Superior Court*
(1979) 91 Cal.App.3d 541 ................................................................................. 12

*PepsiCo, Inc. v. California Security Cans*
(C.D. Cal. 2002) 238 F.Supp.2d 1172 ......................................................... 21, 23

*PepsiCo, Inc. v. Triunfo–Mex, Inc.*
(C.D. Cal. 1999) 189 F.R.D. 431 ...................................................................... 20

*Philadelphia Indemnity v. Montes-Harris*
(2006) 40 Cal.4th 151 .......................................................................................... 4

*Phillis Morris USA, Inc. v. Castworld Prods., Inc.*
(C.D. Cal. 2003) 219 F.R.D. 494 ...................................................................... 21

*Safeco Ins. Co. of Illinois v. Skar*
(D. Minn. 2011) 2011 WL 3163332 ................................................................. 13

*St. Paul Fire & Marine Ins. Co. v. Love*
(Minn.1990) 459 N.W.2d 698 ........................................................................... 13

*St. Paul Fire & Marine v. Mitchell*
(1982) 164 Ga. App. 215 ................................................................................... 13

*Torbensen v. Family Life Ins.*
(1958) 163 Cal.App.2d 401 ................................................................................. 5

*Tradewinds Escrow v. Truck Ins. Exchange*
(2002) 97 Cal.App.4th 704 ........................................................................... 12, 14

*Travelers Com. Ins. Co. v. Jennifer A.*,
699 F. App'x 607 (9th Cir. 2017) ...................................................................... 16

*U.S. Specialty Ins. v. Bridge Capital*
(C.D. Cal 2007) 482 F. Supp. 2d 1164 ............................................................... 5

*Uhrich v. State Farm.*
(2003) 109 Cal. App. 4th 598 ................................................................. 13, 17, 18

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

v

3892 47092 4892-2982-3895 .v1

*Uhrich v. State Farm*
   *supra* 109 Cal.App ........................................................................... 15

*Vogel v. Rite Aid*
   (C.D. Cal. 2014) 992 F.Supp.2d 998 ........................................... 23

*Warner Bros. Entm't Inc. v. Caridi*
   (C.D. Cal. 2004) 346 F. Supp. 2d 1068 ....................................... 22

*Wecosign . v. IFG Holdings*
   (C.D. Cal. 2012) 845 F. Supp. 2d 1072 ....................................... 22

*Zipkin v. Freeman*
   (Mo. 1968) 436 S.W.2d 753 ......................................................... 13

**Statutes**

Cal. Ins. Code § 331 ....................................................................... 4

Cal. Ins. Code § 334 ....................................................................... 5

Cal. Ins. Code § 359 ....................................................................... 4

Cal. Ins. Code § 533 ..................................................................... 16

C.C.P. §1689 ................................................................................... 4

**Other Authorities**

FRCP 8(b)(6) ................................................................................... 6

FRCP 36(a) ....................................................................................... 8

FRCP 54(c) ..................................................................................... 20

FRCP 55 (a)(b)(2) .............................................................. 1, 19, 20

Local Rule 55-1 ..................................................................... 19, 20

Soldier and Sailors Civil Relief Act at 50 U.S.C. App. § 521 ............... 20

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

vi

3892 47092 4892-2982-3895 .v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Federal Rule of Civil Procedure 55(a) authorizes the Court to enter a default judgment against a party who "fail[s] to plead or otherwise defend" a claim. Defendant, John David Meints ("Meints") failed to file a responsive pleading to the operative First Amended Complaint ("FAC") and therefore default judgment is appropriate.

This is an insurance coverage suit. Nautilus seeks to rescind the policy (the "Policy") issued to NuLife Mulholland, LLC ("NuLife Mulholland") under which Meints qualifies as an insured. If the Policy is rescinded, then judgment is appropriate on all claims. In the alternative, Nautilus seeks a partial judgment as to all other claims to state that the underlying action at issue is not covered and reimbursement is owed.

The Policy should be rescinded as NuLife Mulholland concealed, misrepresented, and/or failed to disclose material information on its insurance application (the "Application"). In the Application, NuLife Mulholland stated that the Policy would only cover a landlord who leased a property to others. NuLife Mulholland also stated in the Application that it did not operate a medical facility or contract with or employ medical professionals. These representations were false. The underlying action asserts that Meints and NuLife Mulholland operated a residential and outpatient treatment/detoxification health facility licensed by the State of California. The underlying action alleges that while Dakota Pike ("Pike") was a patient at the rehab medical center, she had a sexual relationship with Meints. Pike also alleges the medical care she received was below the standard of care.

Beyond the allegations in the underlying action, evidence shows that NuLife Mulholland operated the medical care facility and contracted or employed medical professionals. NuLife Mulholland has admitted these facts in this action in Requests

1

3892 47092 4892-2982-3895 .v1

1 for Admissions.  NuLife Mulholland also admitted this in its Bankruptcy Petition

2 filed under oath (Nautilus obtained leave from the bankruptcy court to name NuLife

3 Mulholland in this suit.) If Nautilus had known the truth about NuLife Mulholland's

4 operations, it would not have issued the policy and therefore is entitled to rescind

5 the Policy. Alternatively, if the Policy is not rescinded, Nautilus seeks partial

6 judgment that there is no duty to defend or indemnify the underlying action and on

7 its reimbursement claim.

8 ## II.   THE UNDERLYING ACTION

9   Pike, the underlying plaintiff filed the underlying action styled: *Dakota J. Pike*

10 *v. Nulife Wellness Group, LLC, et al*., Los Angeles County Superior Court Case No.

11 19STCV00665 ("Underlying Action") against NuLife Mulholland, Meints, and

12 others. (Declaration of Laura R. Ramos ("Ramos Decl.") ¶ 3; **Exhibit 3**, pg. 68

13 Underlying Complaint.) The Underlying Action asserts that Pike checked into a

14 "NuLife Treatment Center" a residential detoxification facility licensed by the

15 California Department of Health Care Services and operated by Meints and NuLife

16 Mulholland for treatment of her opioid addiction. (**Exhibit 3**, pg. 70 ¶ 11,

17 Underlying Complaint.) Pike alleges a sexual relationship began between her and

18 Meints to which Pike was unable to consent. (**Exhibit 3**, pgs. 75-76 ¶¶ 23-25,

19 Underlying Complaint). The underlying complaint alleges:

20   • Meints held himself out as a licensed therapist and counselor and

21 treated, diagnosed, and cared for Pike (**Exhibit 3**, pgs. 70-71 ¶ 12, Underlying

22 Complaint);

23   • "because the nature of the counseling and the transference

24 phenomenon, Pike was induced to place special trust and confidence with respect to

25 the course of the treatment." (**Exhibit 3**, pg. 80 ¶ 49, Underlying Complaint);

26   • Meints used his powers to engage in sexual contact knowing Pike was

27 vulnerable, and deliberately pursued Pike by an abuse of the transference

28 phenomenon with a deliberate course of conduct designed to cause her to succumb

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

2

3892 47092 4892-2982-3895 .v1

1  to sexual advances (**Exhibit 3**, pg. 78 ¶ 35, Underlying Complaint);

2  •  "while [Pike] was heavily medicated, Meints "confronted and

3  professed his feelings for her"; expressed his "love" for her; they engaged in sex at

4  the NuLife Mulholland rehab facility after he said they "needed to have sex to be

5  sure of their attraction to each other." (**Exhibit 3**, pgs. 75-76 ¶¶ 23-25, Underlying

6  Complaint).

7  The allegations in the Underlying Actions are set forth in greater detail in

8  **Exhibit 3**, the Underlying Complaint.

9  **III.  PROCEDURAL HISTORY**

10  Nautilus filed its initial complaint on January 9, 2023. Meints filed an Answer

11  on February 10, 2023. Thereafter, Nautilus moved to file an FAC. The motion was

12  granted. Nautilus filed its FAC on June 30, 2023. The FAC was served on Meints.

13  Meints did not answer or respond to the FAC.

14  **IV.  NAUTILUS IS ENTITLED TO A DEFAULT JUDGMENT**

15  **A.  Rescission Of the Policy Is Required**

16  The fourth cause of action in the FAC is for Rescission. Nautilus issued an

17  insurance to NuLife Mulholland. (**Exhibit 16**, pg. 404 ¶ 9, Declaration of Nick

18  Graham ("Nautilus Underwriter Decl."); **Exhibit 2**, pg. 11, the Policy.) Meints is

19  not a named insured but qualifies as an insured. He is not an "innocent insured"

20  as he is the CEO and sole member of the LLC and is the person who submitted the

21  Application with the misrepresentations in it. (Ramos Decl. ¶ 5; **Exhibit 5**, pg.

22  124, request 2, Nautilus RFA S1; **Exhibit 6**, pg. 155, the Operating Agreement;

23  **Exhibit 16**, pg. 404 ¶ 4 Nautilus Underwriter Decl.; **Exhibit 1**, pg. 8, the

24  Application.) When an insured conceals or misrepresents material information on

25  an application, the insurer has the right of rescission enforced by a court. *Mitchell*

26  *v. United National* (2005) 127 Cal.App.4th 457, 467-73; *Imperial Casualty. v.*

27  *Sogomonian* (1988) 198 Cal.App.3d 169, 182 ("As we have concluded that

28  defendants made material false statements in their application, [the insurer] has a

3

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4892-2982-3895 .v1

statutory right to rescind the policy.")  C.C.P. §1689 states a party may rescind a contract under Insurance Code.  The Insurance Code states:

> Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.  Cal. Ins. Code § 332.

> Neglect to communicate that which a party knows, and ought to communicate, is concealment.  Cal. Ins. Code § 330.  Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.  Cal. Ins. Code § 331 … If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false. Cal. Ins. Code § 359.

Courts have consistently held even negligent or innocent concealment warrants rescission.  *See LA Sound. v. St. Paul Fire & Marine* (2007) 156 Cal.App.4th 1259 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance … Courts have applied Insurance Code sections 331 and 359 to permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance.") (internal citations omitted); *Philadelphia Indemnity v. Montes-Harris* (2006) 40 Cal.4th 151, 157 (recession warranted where misstatements 'were the result of negligence, or, indeed, the product of innocence.'")  In other words, the insurer need not prove that the applicant intended to deceive the insurer.  *Mitchell*, 127 Cal.App.4th at 469 (holding an "insurer need not prove that the applicant-insured actually intended to deceive the insurer"); *LA Sound*, 156 Cal.App.4th at 1269 ("[M]isstatement or concealment of 'material' facts is ground for rescission *even if unintentional* … the insurer need not prove  the insured actually intended to deceive the insurer.")

For rescission, "[m]ateriality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the

4

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4892-2982-3895 .v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1    communication is due, in forming his estimate of disadvantages of the proposed

2    contract, or in making his inquiries." Cal. Ins. Code § 334.  Determining materiality

3    is "is a subjective test [wherein] the critical question is the effect truthful answers

4    would have had on [the insurer], not on some 'average reasonable' insurer."

5    *Imperial Cas. & Indem.,* 198 Cal.App.3d at 181; *see also Coca Cola. v. Columbia*

6    *Cas.* (1992) 11 Cal.App.4th 1176, 1189 fn.4.; *Cummings v. Fire Ins. Exchange*

7    (1988) 202 Cal.App.3d 1407, 1414-15 fn.7.  More specifically, "[t]he test for

8    materiality is whether the information would have caused the underwriter to reject

9    the application, charge a higher premium, or amend the policy terms, had the

10   underwriter known the true facts." *Mitchell*, 127 Cal.App.4th at 474; *LA Sound,* 156

11   Cal.App.4th at 1268-69; *see also Merchants Fire. v. Lattimore* (1949) 263 F. 2d 232,

12   241 ("The test looks only to the evidence concerning the attitude or practice of the

13   insurance company involved in the suit.") Misrepresentations need not relate to the

14   loss claimed by the insured (although here they do.) *Torbensen v. Family Life Ins.*

15   (1958) 163 Cal.App.2d 401, 405.   Misrepresentations are also considered material

16   if the evidence points to no other reasonable inference that can be drawn.   *U.S.*

17   *Specialty Ins. v. Bridge Capital* (C.D. Cal 2007) 482 F. Supp. 2d 1164, 1168

18   (judgment warranted for the insurer "where the only reasonable inference to be

19   drawn from the evidence is that the misrepresentations and omissions of the insured

20   were material to the decision to issue the policies.")  To prove this, an insurer may

21   rely on its underwriters to declare that the insurer would have rejected the application

22   had they known material facts which were misstated. *See Freeman v. Allstate Life*

23   *Ins.* (9th Cir. 2001) 253 F.3d 533, 537 (holding that an "innocent misstatement" on

24   the application for insurance was grounds for rescission, in part, by relying on the

25   testimony of the insurer's operations manager.) Finally, "rescission effectively

26   renders the policy totally unenforceable from the outset, so that there never was any

27   coverage, and therefore no benefits are payable."  *Imperial Cas. & Indem.*, 198

28   Cal.App.3d at 182.

**(1)   The Nautilus Policy Was Issued Based Misrepresentations**

Once default has been entered by the Clerk, the factual allegations in the complaint, except those concerning damages, are taken as true and deemed admitted by the nonresponding party.  Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Grp.* (9th Cir. 1977) 559 F.2d 557, 560; *Garamendi v. Henin* (9th Cir. 2012) 683 F.3d 1069, 1080; *Fair Housing of Marin v. Combs* (9th Cir. 2002) 285 F.3d 899, 906 ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true.")  Accordingly, the factual allegations as pled by Nautilus should be taken as true and deemed admitted by Meints.  Regardless, evidence outside of the pleadings supports this default.

NuLife Mulholland's Application stated:

- "nature of the business" as "lessors risk" (**Exhibit 1**, pg. 2, Application);

- "Description of Primary Operations" is "Lessors risk – insured will rent the house to a sober living facility called New [sic] Life Recovery.  They will name [NuLife Mulholland] as Additional Insured" (**Exhibit 1**, pg. 2, Application);

- The leased property is 24969 Mulholland Highway, Calabasas, CA 91302 (the "Property") (**Exhibit 1**, pg. 2, Application);

- NuLife Mulholland answered "No" to the question, "Any medical facilities provided or medical professionals employed or contracted?" (**Exhibit 1**, pg. 7, Application);

NuLife Mulholland expressly warranted that its business was leasing a building only. A lessors risk policy is not underwritten to provide coverage for risks associated with the operations of a tenant. (**Exhibit 16**, pg. 405 ⁋ 13, Nautilus Underwriter Decl.) As a condition of issuing a "lessors risk" policy, Nautilus requires that the tenant maintain its own commercial liability policy and that

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

6

3892 47092 4892-2982-3895 .v1

NuLife Mulholland be named as an additional insured on that policy. (**Exhibit 16**, pg. 405 ‖ 14, Nautilus Underwriter Decl.)

Based on representations made in the Application, Nautilus issued the Policy. (**Exhibit 16**, pg. 405 ‖ 12, Nautilus Underwriter Decl.) The Policy indicates in several places that it was issued as a "lessors risk" policy:

- business description as "LRO – Dwelling" ("LRO" stands for "lessors risk") (**Exhibit 16**, pg. 405 ‖ 15, Nautilus Underwriter Decl.; **Exhibit 2**, pg. 11, Policy); and

- risk classification is listed as "Dwellings (lessor's risk only)" (**Exhibit 16**, pg. 405 ‖ 15, Nautilus Underwriter Decl.; **Exhibit 2**, pg. 20, Policy.)

Nautilus learned after it issued the Policy that NuLife Mulholland was operating a medical facility and contracting with or employing medical professionals at the insured location. (**Exhibit 16**, pgs. 405-06 ‖‖ 19, 20, Nautilus Underwriter Decl.) Nautilus also learned that NuLife Mulholland was not named as an additional insured on any tenant's insurance (**Exhibit 16**, pg. 406 ‖ 21, Nautilus Underwriter Decl.)

Meints, as the President, CEO, and only member of the LLC of NuLife Mulholland, admitted in Requests for Admissions:

- that he was the sole member of Nulife Mulholland (**Exhibit 5**, pg. 124, request 2, Nautilus RFA S1; **Exhibit 6**, pg. 155, the Operating Agreement);

- NuLife Mulholland operated a live-in rehab or treatment facility located at the Property under license number 190996AP issued by the California Department of Health Care Services (**Exhibit 5**, pg. 124, request 1, Nautilus RFA S1);

- NuLife Mulholland, as part of its operations from June 20, 2017 to June 20, 2018 for a live-in rehabilitation and treatment facility located

7

3892 47092 4892-2982-3895 .v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

at the Property retained "medical professionals" to treat those persons who resided at the facility Services (Ramos Decl. ⁋ 5; **Exhibit 7**, pg. 157, request 7, Nautilus RFA S2);

- NuLife Mulholland, as part of its operations from June 20, 2017 to June 20, 2018 for a live-in rehabilitation and treatment facility located at the Property retained "medical professionals" who prescribed prescription medications to persons who resided at the facility (**Exhibit 7**, pg. 157, request 8, Nautilus RFA S2);

Before he was in default, Meints failed to respond to the Requests for Admissions. (Ramos Decl. ⁋ 6.) The requests are therefore deemed admitted by operation of law. *See* Fed. Rule of Civ. P. 36(a); *See also, Conlon v. U.S.* (9th Cir. 2007) 474 F.3d 616 (requests for admissions are admitted for failure to respond.)

The above admissions are also evidenced by other documents. On February 28, 2018, during the Policy's period, Meints, on behalf of NuLife Mulholland, filed with the California Secretary of State a Statement of Information which described NuLife Mulholland's type of business as "Health care". (Ramos Decl. ⁋ 16; **Exhibit 13**, pg. 265, SOS Statement of Info.) NuLife Mulholland also filed a Voluntary Petition for Bankruptcy which is signed under penalty of perjury by Meints in which NuLife Mulholland admitted that it operated under a "dba" of NuLife Treatment Center which was formally known as ("FKA")  NuLife Recovery (Ramos Decl. ⁋ 16; **Exhibit 4**, pg. 88, Bankruptcy Petition);  that the nature of NuLife Mulholland's business was "Substance abuse and mental health rehabilitation" (**Exhibit 4**, pg. 112, Bankruptcy Petition); and the location where it provided "Substance abuse and mental health rehabilitation" was the Property listed on the Nautilus policy and application: "24969 Mulholland Hwy, Calabasas, Ca 91302" (**Exhibit 4**, pg. 112, Bankruptcy Petition).

Additionally, NuLife Mulholland provided numerous verified responses to written  discovery  and  produced  documents  in  the  Underlying  Action

8

acknowledging that NuLife Mulholland operated as a healthcare treatment facility that employed medical professionals. (Ramos Decl. ¶¶ 8, 11-12; **Exhibit 10**, NuLife Underlying Responses to Form Rogs; **Exhibits 22-25**, Underlying Responses to RFP; **Exhibit 8**, JC Quality Report; **Exhibit 11**, Employee Handbook; **Exhibit 12**, Employment Contracts; and **Exhibit 14**, Policies and Procedures Manual.)  First, as noted above, NuLife Mulholland operated under the fictitious name "NuLife Treatment Center", so any documents attributed to "NuLife Treatment Center" are attributable to NuLife Mulholland. (**Exhibit 10**, pg. 188, response 3.6a, NuLife Underlying Responses to Form Rogs.) Both NuLife Mulholland and Meints (as the sole member of NuLife Mulholland) identified as its "employees" medical professionals such as M.D.s, Licensed Marriage and Family Therapists, Nurse Practitioners, and Licensed Vocational Nurses. (**Exhibit 9**, pg. 174, responses 12.1, Meints Underlying Responses to Form Rogs; **Exhibit 10**, pgs. 191, 196, responses 12.1, 15.1b, NuLife Underlying Responses to Form Rogs.) NuLife Mulholland produced a healthcare accreditation Quality Report issued to "NuLife Mulholland DBA: Nulife Treatment Centers". (**Exhibit 8**, pg. 162, JC Quality Report.) NuLife Mulholland produced numerous documents bearing "NuLife Treatment Centers" insignia including an Employee Handbook, a Policies and Procedures Manual, and several employment contracts for medical professional positions including Licensed Vocational Nurse and Alcohol & Drug Counselor, all of which unequivocally indicate that NuLife Mulholland was operating substance abuse recovery facility that employed or contracted with medical professionals.  (**Exhibit 11**, pg. 200, Employee Handbook; **Exhibit 14**, pg. 266, Policies and Procedures Manual; **Exhibit 12**, pgs. 242-64, Employment Contracts; **Exhibit 12**, pgs. 261-62, Employment Contracts; **Exhibit 12**, pgs. 253-54, Employment Contracts.)

In sum, the evidence undisputedly shows that NuLife Mulholland operated a healthcare facility in the form of a substance abuse recovery center at the Property

9

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  which employed or contracted with medical professionals.  Had these true facts

2  been disclosed, Nautilus would not have issued the Policy, even under different

3  terms or a higher premium. (**Exhibit 16**, pg. 406 ℙℙ 22-24, Nautilus Underwriter

4  Decl.) Nautilus does not issue commercial general liability policies such as the one

5  at issue here to insureds which operate medical or health care facilities or to

6  insureds which employ and/or contract with medical professionals. (**Exhibit 16**,

7  pg. 407 ℙℙ 26-27, Nautilus Underwriter Decl.) Such risks are outside Nautilus's

8  underwriting guidelines. (**Exhibit 16**, pg. 407 ℙℙ 26-27, Nautilus Underwriter

9  Decl.)

10  Accordingly, Nautilus is entitled to have the court deem the policy rescinded

11  *ab initio.* As Meints is only an insured if the policy issued to NuLife Mulholland

12  policy were in place, Meints has no coverage.

13  **B.    If the Policy Is Rescinded Judgment is Warranted On All Claims**

14  If the court deems the policy rescinded *ab initio*, then judgment is warranted

15  on all claims as it is as if no policy were issued at all. Therefore, there could be no

16  duty to defend or indemnify the Underlying Action.   Declaratory Relief is the

17  appropriate cause of action for a finding that the insurer has no duty to defend and/or

18  indemnify under a liability policy.  *See Essex Ins. Co. v. Yi* (N.D. Cal. 1992)  795 F.

19  Supp. 319, 322. If the policy is rescinded, judgment on Nautilus' reimbursement

20  claim against Meints is also appropriate, as is further discussed below.

21  **C.    The Professional Services Exclusion Bars Coverage For The**

22  **Underlying Action**

23  In the alternative, if the Policy is not rescinded, partial judgment should be

24  granted as to the duty to defend and indemnify, and as to reimbursement because the

25  coverage is excluded under the Professional Services Exclusion.  The Underlying

26  Action arose from NuLife Mulholland's and Meints' failures in operating a medical

27  facility with medical professionals for drug rehabilitation. (**Exhibit 3**, pg. 68-87,

28  Underlying Complaint.) This is a professional service excluded by the Policy. The

10

Policy contains an endorsement excluding coverage for "Any and all professional services of the named insured." (**Exhibit 2**, pgs. 12, 39, the Policy.) It excludes coverage for damages "due to the rendering of or failure to render any professional service." (**Exhibit 2**, pgs. 12, 39, the Policy.) Furthermore, the exclusion applies:

> "… even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

(**Exhibit 2**, pg. 39, the Policy.)

As stated above, NuLife Mulholland admitted that its business is "health care". (**Exhibit 13**, pg. 265, SOS Statement of Info.) The NuLife Mulholland Bankruptcy Petition admits that it operated under a "dba" of Nu Life Treatment Center which was formally known as ("FKA") NuLife Recovery; and the nature of its business was "Substance abuse and mental health rehabilitation" and it conducted that business at the insured property. (**Exhibit 4**, pg. 88, 112, Bankruptcy Petition.) Furthermore, the basis for the Underlying Action is Pike's medical treatment for addiction at the NuLife Mulholland's rehab center. (**Exhibit 3**, pgs. 68-87, Underlying Complaint.)

Under California law, the term "professional services" as used in exclusions is <u>not</u> narrowly circumscribed to activities traditionally considered to be professions, such as medicine, law, or engineering, but generally signify an activity done for remuneration as distinguished from a mere pastime, and for which some training or experience is required. *See, e.g., Hollingsworth v. Com. Union Ins.* (1989) 208 Cal. App. 3d 800 (injury arising from ear-piercing service at a retail cosmetic store arose from a "professional service" within meaning of exclusion). "Professional services" are those "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." The definition

11

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4892-2982-3895 .v1

is broader than "profession," and encompasses services performed for remuneration. *Tradewinds Escrow v. Truck Ins. Exchange* (2002) 97 Cal.App.4th 704, 713. "Professional services" is broad and even where, as here "professional services" is not defined. *See Amex Assurance Co. v. Allstate Ins. Co.* (2003) 112 Cal.App.4th 1246, 1252 ("ordinary meaning of the word 'professional' is no longer limited to the 'learned professions,' but has a broader scope that includes skilled services such as plumbing.") Here of course, the professional services in fact were medical services which are traditionally considered a professional service.

Professional service exclusions have applied to a wide variety of business services performed, including medical and therapeutic services. *See, e.g.*, *Hollingsworth, supra*; *Commercial Underwriters v. Superior Court* (2000) 84 Cal.App.4th 181 (coverage barred for a therapist, which included a sexual relationship and manipulative conduct); *Amex Assurance Co. v. Allstate Ins. Co.* (2003) 112 Cal.App.4th 1246, 1252 (coverage barred for a plumber); *Tradewinds Escrow supra,* 97 Cal.App.4th at 713 (coverage barred for an escrow agent); *Northern Insurance Co. v. Superior Court* (1979) 91 Cal.App.3d 541, 544 (negligent performance of abortion on wrong patient due to clerical error in mixing up patient charts); *Antles v. Aetna Casualty & Surety Co.* (1963) 221 Cal.App.2d 438, 439 (coverage barred for a chiropractor); *Burlington Insurance Company v. Bay One Security.* (N.D. Cal. 2018) 2018 WL 1730425 (failure by security services to provide adequate protection for claimant); *Begun v. Scottsdale Insurance Company, Inc* (N.D. Cal. 2013) 2013 WL 12077974 (services performed by payroll agent).

Here, the drug rehabilitation services provided by NuLife Mulholland qualify as "professional services" because they are medical in nature and/or involve specialized rehabilitative and therapeutic services that were offered to Pike for remuneration and the benefit of the NuLife Mulholland's and Meints' business.

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4892-2982-3895 .v1

**(1)**    <u>**Injury From Sexual Misconduct Is Excluded Under The**</u>
           <u>**Professional Services Exclusion**</u>

The Policy excludes damages for bodily injury for the "rendering" and "failure to render" "professional services". (**<u>Exhibit 2</u>**, pg. 39, the Policy.) Courts have held that this language bars coverage arising from sexual misconduct due to the rendering or failure to render professional services. *See, e.g., Cranford Ins. Co., Inc. v. Allwest Ins. Co.* (N.D. Cal. 1986) 645 F.Supp. 1440; *Safeco Ins. Co. of Illinois v. Skar* (D. Minn. 2011) 2011 WL 3163332; *National Fire Ins. Co. of Hartford v. Lewis* (D. Ariz. 2012) 898 F. Supp. 2d 1132; *Commercial Underwriters Ins. v. Superior Court* (2000) 84 Cal.App.4th 181.

Courts have also held that an insured's abuse of the transference phenomenon—a phenomenon on which Pike bases her claims (**<u>Exhibit 3</u>**, pgs. 73, 78, 80, 82 ¶¶ 14x-14z, 14aa-14cc, 36-37, 49, 59, Underlying Complaint)—constitutes a failure to render professional services. *See St. Paul Fire & Marine Ins. Co. v. Love* (Minn.1990) 459 N.W.2d 698 ("we believe the sexual contact between the therapist and patient arising from the [transference] phenomenon may be viewed as the consequence of a failure to provide proper treatment of the transference. In other words, the patient's claim results from the providing of improper professional services or the withholding of proper services."); *see also Zipkin v. Freeman* (Mo. 1968) 436 S.W.2d 753; *Uhrich v. State Farm.* (2003) 109 Cal. App. 4th 598, as modified); *St. Paul Fire & Marine v. Mitchell* (1982) 164 Ga. App. 215, 218-19. Meints' sexual misconduct was a consequence of NuLife Mulholland's "rendering of" professional services since this misconduct stemmed from his interactions with Pike, in his professional capacity, while working at NuLife Mulholland's medical rehabilitation center while Pike was a patient. (**<u>Exhibit 3</u>**, pg. 68-87, Underlying Complaint.) Meints' sexual misconduct took place while Pike was under the care of the NuLife Mulholland. (**<u>Exhibit 3</u>**, pg. 68-87, Underlying Complaint.) In addition, Meints' sexual misconduct can be classified as a consequence of the NuLife

13

Mulholland's "failure to render" professional services since such misconduct— including without limitation directing that Pike receive an unnecessary amount of suboxone, abusing the transference phenomenon, having sexual contact with a patient. (**Exhibit 3**, pgs. 75-80, 82, 84-86 ¶¶ 23-27, 30, 35-37, 44, 58, 64, 72, 79, 81, Underlying Complaint.) In sum, Meints' sexual misconduct constitutes a failure to perform proper the "professional service" of treatment of rehabilitative and therapeutic services.

**(2)    Pike's Alleged Injury Due to Non-Sexual Misconduct Is An Excluded Professional Service**

Pike allegations of "negligent and careless treatment" of her by the NuLife Mulholland and Meints clearly fall under the Professional Services Exclusion as well. (**Exhibit 3**, pgs. 71-74 ¶ 14, Underlying Complaint.) These allegations involve a failure to provide medical services including the NuLife defendants' "failure to completely and accurately assess Plaintiff's need for services," "failure to completely and accurately diagnose Plaintiff," and "prescription of inappropriate medications to Plaintiff." (**Exhibit 3**, pgs. 71-74 ¶¶ 14, 14i-14j, 14l, Underlying Complaint.)

The exclusion applies if the alleged injury is incurred during the performance of professional services. *See, Tradewinds Escrow. Supra,* 97 Cal.App.4th at 713. Here, the professional services received by Pike were performed by NuLife Mulholland, including Meints, throughout her time at the facility:

> MEINTS participated in weekly staff member meetings where patient care, including Plaintiffs, was discussed, and that MEINTS even took part in decisions regarding medication and all of the key aspects of Plaintiffs treatment. He became the most significant "counselor" for Plaintiff, and she trusted him more than any of the clinicians at the facility. (**Exhibit 3**, pgs. 71-72 ¶ 12.)

Pike has asserted that "at all relevant times," including "even after [Pike] left the

14

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Treatment Center," "[Meints] held himself out to be part of Plaintiff's clinical team."
(**Exhibit 3**, pgs. 71-72 ⁋ 12.)  In addition, Pike alleges that Meints was involved in
handling the details of her treatment even after she left the treatment center:

> "[T]here were no clinical interactions, insights, or treatment by
> MEINTS that were any different than her interaction with licensed
> professionals at the Treatment Center. MEINTS would make insights,
> suggest behaviors, suggested treatment strategies, and basically
> practicing [sic] psychology…This continued even after Plaintiff left the
> Treatment Center." (**Exhibit 3**, pgs. 71-72 ⁋ 12.)

The injury to Pike occurred during the performance of professional services,
even to the extent injury occurred after Pike left NuLife Mulholland. Coverage is
barred under the Professional Services Exclusion due to the underlying defendants'
failure to appropriately address the transference phenomenon. *See Uhrich v. State
Farm supra* 109 Cal.App.4th at 620 (professional services exclusion applied to
insured psychologist's failure to prevent patient's transference phenomenon that
continued even after severance of the professional relationship). Accordingly,
coverage is entirely excluded under the Professional Services Exclusion.

### D.    Coverage is Barred As All Conduct is Intentional

As stated above, all the allegations regarding the negligent medical care
provided to Pike are excluded. As an alternative grounds as to why there is no
coverage, all the sexual misconduct from Meints are excluded intentional acts. The
Policy only covers bodily injury caused by an "occurrence," which is  "an accident,
including continuous or repeated exposure to substantially the same general harmful
conditions."  (**Exhibit 2**, pg. 35, Policy.)  Under Insurance Code § 533, insurers are
not liable for losses caused by the willful act(s) of the insured.

### (1)    Sexual Misconduct Is Intentional and Does Not Constitute an "Occurrence"

Under California law, sexual misconduct as the basis for infliction of

15

3892 47092 4892-2982-3895 .v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  emotional distress, battery, and sexual harassment are willful acts and not insurable.

2  *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1603;

3  *see also Travelers Com. Ins. Co. v. Jennifer A.*, 699 F. App'x 607, 609 (9th Cir.

4  2017) (acts of unprotected sex with other women that placed claimant in fear of

5  contracting HIV—the conduct for which liability was imposed—were deliberate and

6  therefore not accidents within the meaning of the policy).

7      In *Coit,* the insured's executive shareholder made numerous unwelcome

8  advances including "[attempts to] involve her in a game of strip poker, [questions]

9  about her underwear, and [attempts] to get her into a hot tub." *Coit Drapery supra*,

10  14 Cal.App.4th at 1603. The executive also invited the claimant to his private office

11  during business hours, asked the claimant to pour him a drink, squeezed the claimant

12  after asking for a "passionate hug," then made sexual advances on the claimant. *Id.*

13  The court reasoned that "California law and applicable precedents do not allow the

14  characterization of such clearly intentional and willful sexual misconduct as merely

15  negligent or nonwillful, so as to trigger insurance coverage." *Id.* Ins. Code section

16  533, "and the public policy it represents, bar the attempt to shift liability for

17  intentional sexual harassment and associated employment-related torts (claims of

18  wrongful discharge, infliction of emotional distress, battery, and sexual assault) to

19  an insurer." *Id.* at 1603.

20      Moreover, where allegations of negligent conduct are "inseparably

21  intertwined" with noncovered intentional conduct, there is no coverage. *Jane D. v.*

22  *Ordinary Mutual* (1995) 32 Cal.App.4th 643, 653; *Uhrich v. State Farm supra* 109

23  Cal.App.4th 598 ("In theory, in the course of his malicious campaign [the insured]

24  also may have committed nonmalicious torts. But where allegations are 'inseparably

25  intertwined' with noncovered intentional conduct, there is no coverage."). In *Jane*

26  *D,* a priest misused his counseling relationship to induce the claimant to project onto

27  the priest feelings of affection, love, and sexual attraction, leading to the claimant to

28  have sex with the priest, forming the basis for causes of action for negligence,

16

negligent infliction of emotional distress, and breach of fiduciary duty against the priest. *Id.* at 646.  The court held that the allegations of negligent counseling were inseparable from the sexual misconduct. *Id.* at 653 ("obtaining information about plaintiff during counseling and using this information and misusing counseling techniques to create transference and to control and induce plaintiff's behavior" was "inseparably intertwined" with counselor's sexual misconduct.)

Here, Pike's allegations are factually similar to those allegations of use of a counseling relationship in *Jane D* that was used to induce a sexual relationship. Pike alleges that she was given drugs which exacerbated her feelings of vulnerability, during which time Meints groomed her for a sexual relationship through counseling, the transference phenomenon, and his position of power as the person in charge of the treatment facility. (**Exhibit 3**, pgs. 70, 74, 75-76, 78-80, 82, 84 ¶¶ 12, 14ii-14jj, 21-23, 35-37, 49, 59, 70, 74, 79.) Pike's complaint makes clear that Meints' actions including flirtation while Pike was heavily medicated, paying extra attention to Pike, attending Pike's therapy sessions, confessing his feelings for Pike while she was still a patient at the facility, exchanging love letters, and revealing his knowledge of her detailed personal information, were part of a deliberate course of conduct designed to cause Pike to succumb to Meints' sexual advances. (**Exhibit 3**, pgs. 75-76, 78 ¶¶ 23-24, 26, 36.) As such, Meints' conduct was part of a design to provide him with "an isolated, alienated, more compliant victim" of his sexual misconduct, such that the sexual misconduct and other alleged acts were inseparably willfully harmful.

**(2)** **The Claim is Either From Noncovered Conduct Under the Professional Services Exclusion or Inseparably Intertwined with Noncovered Conduct**

Again, where allegations are inseparably intertwined with noncovered conduct, there is no insurance coverage even where claims appear to be covered. *Uhrich v. State Farm supra* 109 Cal.App.4th at 614-15 ("In theory, [there may be] nonmalicious torts. But where allegations are "'inseparably intertwined'" with

17

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4892-2982-3895 .v1

noncovered intentional conduct, there is no coverage."). *Energy Ins. Mutual Limited v. Ace American Ins. Co.* (2017) 14 Cal.App.5th 281, 298-99 ("The underlying personal injury and wrongful death actions theoretically raise some claims that do not arise out of Comforce's and Kinder Morgan's provision of or failure to provide professional services.")

In this case, even if Defendants raised hypothetical scenarios of noncovered conduct from the Pike complaint, such allegations would stem from NuLife Mulholland's and Meints' rendering or failure to render professional services to Pike. All allegations against NuLife Mulholland and Meints would therefore either be noncovered or inseparably intertwined with noncovered conduct.

### E.    Claim For Reimbursement

Nautilus is defending Meints in the Underlying Action under a reservation of rights, which includes the right to reimbursement for defense fees expended but not owed. (Ramos Decl. ¶ 18; **Exhibit 19**, Meints ROR). Nautilus has incurred $61,761.54 to defend Meints which is the sum of attorney's fees and costs paid by Nautilus. (**Exhibit 17**, pg. 410 ¶ 10, Declaration of Jeffrey Kagan ("Nautilus Litigation Specialist Decl."); **Exhibit 20**, pgs. 432-40, Meints Costs.)  See **Exhibit 20** for a calculations summary with a chart listing costs to defend Meints. (**Exhibit 17**, pg. 410 ¶ 12, Nautilus Litigation Specialist Decl.; **Exhibit 20**, pgs. 432-40, Meints Costs.) If the Policy is rescinded or if there is no duty to defend, then Nautilus never owed these fees and is entitled to reimbursement. *Buss v. Superior Court* (1997) 16 Cal. 4th 35, *Nautilus Ins. Co. v. MV Transportation* (2005) 36 Cal. 4th 643; *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal. 4th 489.

### V.    DEFAULT JUDGMENT REQUIREMENTS HAVE BEEN MET

FRCP 55 authorizes the Court to enter a default judgment against a party who "fail[s] to plead or otherwise defend" a claim.  FRCP 55 (a)(b)(2). The requirements of Rule 55 are met:

- On June 30, 2023, Meints was served with the FAC. (Ramos Decl. ¶ 18

18

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

22; [ECF 62-1 page 81].)

- On December 19, 2023, the Clerk entered default. (Ramos Decl. ¶ 4; [ECF No 72].)

Nautilus has complied with Local Rule 55-1. Nautilus filed a declaration herewith of counsel for Nautilus, Laura Ramos, which states:

(a) On December 19, 2023, default was entered as to Meints (Ramos Decl. ¶ 4);

(b) Default was as to the FAC which forms the basis for this motion (Ramos Decl. ¶ 4);

(c) The defaulting party is an adult individual who appeared in this action (Ramos Decl. ¶ 25);

(d) Based on a review of the information from this action, my personal discussions with Meints, the fact that Meints participated in the court ordered mediation, the Answer Meints filed to the initial complaint, and the proofs of service on file, Meints is not a minor, incompetent, in military service, or otherwise exempt under the Soldier and Sailors Civil Relief Act at 50 U.S.C. App. § 521. (Ramos Decl. ¶ 25);

(e) Notice of this motion has been served on the Meints. (Ramos Decl. ¶ 26).

The Court has subject matter jurisdiction over this matter based on diversity of citizenship as Nautilus is a citizen of Arizona and all Defendants are citizens of California. (Ramos Decl. ¶ 27). The Court has personal jurisdiction over Meints, as he resides within this judicial district, Meints' acts at issue in the Underlying Action took place in this judicial district, and he has been property served with the operative complaint. (Ramos Decl. ¶ 28).

## VI.   NAUTILUS HAS MET THE CONDITIONS FOR A DEFAULT JUDGMENT

Under FRCP 55(b)(2), a district court is authorized to grant a default judgment after the Clerk of the Court has entered a default pursuant to FRCP 55(a).  FRCP

19

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4892-2982-3895 .v1

1  54(c) is complied with as Nautilus seeks the same relief on default as it seeks in its

2  FAC served on Meints. See the above arguments. Nautilus submits the Declaration

3  of Laura R. Ramos as required by Local Rule 55-1.

4  **VII.    NAUTILUS HAS MET THE *EITEL* FACTORS**

5        The entry of default judgment is within a district court's discretion. *Aldabe v.*

6  *Aldabe*, (9th Cir. 1980) 616 F.2d 1089, 1092. "In applying this discretionary

7  standard, default judgments are more often granted than denied." *PepsiCo, Inc. v.*

8  *Triunfo–Mex, Inc.* (C.D. Cal. 1999) 189 F.R.D. 431, 432. The Ninth Circuit has set

9  forth seven factors listed below (the "*Eitel* factors") for courts to consider whether

10  to enter default judgment. *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1471-72

11        1.    <u>Prejudice to Plaintiff</u>

12        The first *Eitel* factor requires the Court to consider whether withholding

13  default judgment would prejudice the plaintiff.  On a motion for default judgment,

14  "prejudice" exists where the plaintiff has no "recourse for recovery" other than

15  default judgment.  *Phillis Morris USA, Inc. v. Castworld Prods., Inc.* (C.D. Cal.

16  2003) 219 F.R.D. 494, 499.  Here, Meints has not moved to set aside a default.

17  Accordingly, if a default judgment were not entered, Nautilus would be left with no

18  alternative path to recovery.  *See PepsiCo, Inc. v. California Security Cans* (C.D.

19  Cal. 2002) 238 F.Supp.2d 1172, 1177 (finding prejudice if default not entered for

20  injunctive relief).  The first factor supports an entry of a default judgment.

21        <u>2 & 3. Merits of  Substantive Claims and Sufficiency of the Complaint</u>

22        The second and third *Eitel* factors are usually analyzed together.  *PepsiCo. v.*

23  *Cal. Security, supra*, 238 F. Supp. 2d at 1175.  Nautilus refers to the above sections

24  of this brief wherein it provides facts and authorities to support its claims against

25  Meints.  Thus, second and third *Eitel* factors support an entry of default judgment.

26        4.    <u>The Sum of Money at Stake in the Action</u>

27        Under the fourth *Eitel* factor, the Court must balance "the amount of money

28  at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F.

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

20

3892 47092 4892-2982-3895 .v1

Supp. 2d at 1176.  "This requires that the Court assess whether the recovery sought is proportional to the harm caused by the defendant's conduct."  *Landstar Ranger, Inc. v. Parth Enters., Inc.* (C.D. Cal. 2010) 725 F. Supp. 2d 916, 921. Nautilus's only monetary claim as set forth above is reimbursement of defense actual fees incurred to defend Meints in the Underlying Action.  This totals $61,761.54. (**Exhibit 17**, pg. 410 ¶ 12, Nautilus Litigation Specialist Decl.; **Exhibit 20**, pgs. 432-40, Meints Costs.) The fourth *Eitel* factor supports an entry of default judgment.

     5.   <u>Possibility of Dispute Concerning Material Facts</u>

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case."  *PepsiCo.*, 238 F. Supp. 2d at 1177. When a plaintiff has "supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment." *Landstar Ranger, Inc. v. Parth Enterprises* (C.D. Cal. 2010) 725 F.Supp.2d 916, 922; *see also Elektra Entertainment Group v. Crawford* (C.D. Cal. 2005) 226 F.R.D. 388, 393 ("Because all allegations in a well pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").  Here, Nautilus has supported its claims with ample admissible evidence, most of which are admissions by Meints himself in various documents including in his Petition for Bankruptcy. (**Exhibit 4**, pgs. 88, 112, Bankruptcy Petition). Meints has made no attempt to challenge these facts. Thus, there is no possibility of a factual dispute such to preclude judgment.

     6.   <u>Excusable Neglect</u>

Under the sixth *Eitel* factor, courts consider the issue of excusable neglect. "The determination of what conduct constitutes 'excusable neglect' ... is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Brandt. v. Am. Bankers Ins. Co. of Fl.* (9th Cir. 2011) 653 F.3d 1108, 1111 (citations and internal quotation omitted).  "This factor favors default

21

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign . v. IFG Holdings* (C.D. Cal. 2012) 845 F. Supp. 2d 1072, 1082; *see also Warner Bros. Entm't Inc. v. Caridi* (C.D. Cal. 2004) 346 F. Supp. 2d 1068, 1072 ("A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer.") (quoting *Meadows v. Dominican Republic* (9th Cir. 1987) 817 F.2d 517, 521). Here, Meints has actual knowledge of this lawsuit as he appeared and filed an Answer to the initial complaint. [ECF 16.] He was served with the motion to amend the complaint and then the FAC. (Ramos Decl. ¶¶ 21-22; [ECF 58 page 17]; [ECF 62-1 page 81].) He has spoken to counsel about this suit (Ramos Decl. ¶ 23) and participated in the court ordered mediation in October 2023. (Ramos Decl. ¶ 24; [ECF 69].)

       7.   <u>The Policy Favoring Decisions on the Merits</u>

Finally, the seventh *Eitel* factor requires courts to consider whether the court's strong preference for deciding cases on the merits should preclude an entry of default judgment. *Eitel*, 782 F.2d at 1472; *Pepsi Co.*, 238 F.Supp.2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.") However, when defendants fail to appear and defend, the policy of favoring decisions on the merits does not preclude the entry of default judgment. *Vogel v. Rite Aid* (C.D. Cal. 2014) 992 F.Supp.2d 998, 1013. Here, Meints had notice and opportunity take steps to continue to appear to defend this suit. In addition, based on the arguments above, the Court has the basis to make a determination on the merits as Nautilus has proved its case.

**VIII.**   <u>**NAUTILUS'S REQUESTED RELIEF**</u>

Once the right to a default judgment is established, the plaintiff seeking default judgment must then establish that the requested relief is appropriate. *Geddes v. United Fin. Grp.* (9th Cir. 1977) 559 F.2d 557, 560. Nautilus seeks four claims:

    1.  Rescission of the policy

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

2. A declaration that Nautilus owes no duty to defend Meints in the Underlying Action;

3. A declaration that Nautilus owes no duty to indemnify Meints Defendants in the Underlying Action; and

4. Reimbursement of defense fees.

As discussed above, relief is warranted on all grounds under the evidence presented.

## IX.    **CONCLUSION**

Based on the above, Nautilus requests that the Court grant this Motion and enter default judgment as to Meints.

Respectfully Submitted,

DATED: January 4, 2024

SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP

By: /s/*Laura R. Ramos*
ELDON S. EDSON
LAURA R. RAMOS
DAVID S. ELSTNER
Attorneys for Plaintiff,
NAUTILUS INSURANCE COMPANY

MOTION FOR DEFAULT JUDGMENT
2:23-CV-00126-FMO-AGRx

3892 47092 4892-2982-3895 .v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Nautilus Insurance Company certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 4, 2024

SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP

By: /s/*Laura R. Ramos*
ELDON S. EDSON
LAURA R. RAMOS
DAVID S. ELSTNER
Attorneys for Plaintiff,
NAUTILUS INSURANCE COMPANY

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

MOTION FOR DEFAULT JUDGMENT
2:23-CV-00126-FMO-AGRx

3892 47092 4892-2982-3895 .v1

**PROOF OF SERVICE**

*Nautilus Insurance Company v. Nulife Mulholland, LLC, et al.*
United States District Court, CD of CA, Case No. 2:23-cv-00126-FMO-AGR

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of LOS ANGELES, State of California.  I am over the age of 18 years and am not a party to the within action; my business address is 10880 Wilshire Blvd, Suite 1200, Los Angeles, CA, 90024.

On January 4, 2024, I served the following document(s) described as PLAINTIFF NAUTILUS INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO JOHN DAVID MEINTS on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☑     **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FED EX for delivery to the addressee(s).

☐     **BY E-MAIL**: I transmitted a copy of the foregoing document(s) via e-mail to the addressee(s).

☑     **BY ELECTRONIC SERVICE:** by transmitting a copy of the foregoing document(s) via ECF on all parties in this case via their e-mail addresses.

☐     **BY FAX**: I transmitted a copy of the foregoing document(s) via telecopier to the facsimile numbers of the addressee(s), and the transmission was reported as complete and without error.

☐     **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s).

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on January 4, 2024, at Los Angeles, California.

/s/ Madeline Nanas___
Madeline Nanas

Selman Leichenger Edson Hsu Newman & Moore LLP — ATTORNEYS AT LAW

3892 47092 4868-9897-1983 .v1

## SERVICE LIST

| | |
|---|---|
| JOHN DAVID MEINTS JR aka JD MEINTS<br>3935 Prado del Trigo<br>Calabasas, CA 91302<br>meints.jd@gmail.com | **IN PRO SE**<br><br>**Via U.S. Mail** |
| Demian I. Oksenendler, Esq.<br>MANNION LOWE & OKSENENDLER<br>601 Montgomery Street, Suite 1208<br>San Francisco, California 94111<br>Telephone: (415) 733-1050<br>Facsimile: (415) 434-4810<br>Email: demian@mlolawyers.com | **Attorneys for Defendant,**<br>**DAKOTA J. PIKE**<br><br>**Via ECF** |

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3892 47092 4868-9897-1983 .v1