ELDON S. EDSON (SBN CA 168896)
eedson@selmanlaw.com
LAURA R. RAMOS (SBN CA 186326)
lramos@selmanlaw.com
DAVID S. ELSTNER (SBN CA 341156)
delstner@selmanlaw.com
SELMAN LEICHENGER EDSON HSU
NEWMAN & MOORE LLP
10880 Wilshire Blvd. Suite 1200
Los Angeles, CA 90025-6546
Telephone: 310.445.0800

Attorneys for Plaintiff NAUTILUS INSURANCE
COMPANY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, an Arizona Corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>NULIFE MULHOLLAND, LLC; JOHN DAVID MEINTS JR. aka JD MEINTS, an individual; NULIFE WELLNESS GROUP, LLC; NULIFE RECOVERY, LLC; DAKOTA J. PIKE, an individual<br><br>      Defendants. | Case No. 2:23-CV-00126-FMO-AGRx<br><br>Hon. Fernando M. Olguin<br><br>**PLAINTIFF NAUTILUS INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO NULIFE MULHOLLAND, LLC**<br><br>[Filed with Request for Judicial Notice; Declaration of Laura Ramos; Appendix of Exhibits; Notice of Lodging of [Proposed] Order; Notice of Lodging of [Proposed] Judgment]<br><br>Date:    March 21, 2024<br>Time:    10:00 a.m.<br>Courtroom: 6D, 6th Floor<br><br>Complaint filed: January 9, 2023 |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

      PLEASE TAKE NOTICE THAT on March 21, 2024 at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Fernando M. Olguin, located in Courtroom 6D, U.S. District Court for the Central District of California, First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Plaintiff,

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4894-9373-2516.v1

Nautilus Insurance Company ("Nautilus"), will and hereby moves for an entry of default judgment in the captioned matter against Defendant NuLife Mulholland, LLC ("NuLife Mulholland").

This is an insurance coverage suit with regard to coverage for an underlying action filed by Dakota Pike ("Pike") against NuLife Mulholland and others (the "Underlying Action"). The policy (the "Policy") at issue was issued by Nautilus to NuLife Mulholland as the named insured.

Nautilus is seeking judgment as to all parties in this matter. NuLife Mulholland is a suspended company and cannot appear in court. A motion for default judgment as to John David Meints ("Meints") is pending. [ECF 77.] Nautilus' motion for summary judgment as to Pike, who is the underlying claimant and only active defendant in this case, is also pending. [ECF 83.] Judgment has already been entered against NuLife Wellness, LLC and NuLife Recovery, LLC. [ECF 52.]

Nautilus seeks an entry of Default Judgment on each claim against NuLife Mulholland:

1. Nautilus first seeks to rescind the Policy. If the Policy is rescinded, then there is no coverage for the Underlying Action. Therefore, judgment is also warranted as to the first cause of action for Declaratory Relief -No Duty to Defend, the second cause of action for Declaratory Relief- No Duty to Indemnify, and the third cause of action for Reimbursement of Defense Costs.

2. In the alternative, if the Policy is not rescinded, Nautilus moves for partial judgment on the other claims such that there is no coverage for the Underlying Action under the terms of the policy and applicable law. Specifically, Nautilus moves for a default judgment as to the first cause of action for Declaratory Relief - No Duty to Defend, the second cause of action for Declaratory Relief - No Duty to Indemnify, and the third cause of action for Reimbursement of Defense Costs.

As stated above, Nautilus has filed a motion for summary judgment/partial

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4894-9373-2516 .v1

summary judgment against the only active defendant in this case, claimant Dakota Pike.  Nautilus has also filed a motion for default judgment as to Meints which is pending before this Court.  Therefore, the Court will be positioned to enter judgment on all claims as to all remaining parties upon the hearing of the motions for default judgment and the motion for summary judgment.

Nautilus makes this request for default judgment pursuant to FRCP 55(b)(2), Local Rule 55-1, FRCP 58, and Local Rule 58-11.

This Motion is based on this notice, the memorandum of points and authorities herein, the declarations filed herewith, the evidence submitted, pleadings on file, and on any other information deemed appropriate by the Court.

Respectfully submitted,

DATED: February 15, 2024

SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE, LLP

By: /s/*Laura R. Ramos*
ELDON S. EDSON
LAURA R. RAMOS
DAVID S. ELSTNER
Attorneys for Plaintiff NAUTILUS INSURANCE COMPANY

MOTION FOR DEFAULT JUDGMENT AS TO NULIFE MULHOLLAND
2:23-CV-00126-FMO-AGRx

3892 47092 4894-9373-2516 .v1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    THE UNDERLYING ACTION ........................................................... 2

III.   PROCEDURAL HISTORY ................................................................ 3

IV.    NAUTILUS IS ENTITLED TO A DEFAULT JUDGMENT .................. 3

       A.    Rescission Is Required ........................................................... 3

             (1)   The Policy Was Issued Based On Misrepresentations ........... 5

       B.    If the Policy Is Rescinded Judgment is Warranted On All
             Claims ................................................................................... 9

       C.    The Professional Services Exclusion Bars Coverage For The
             Underlying Action ................................................................. 10

             (1)   Injury From Sexual Misconduct Is Excluded Under
                   The Professional Services Exclusion .................................. 12

             (2)   Pike's Alleged Injury Due to Non-Sexual Misconduct
                   Is An Excluded Professional Service .................................. 14

       D.    Coverage is Barred As All Conduct is Intentional .............. 15

             (1)   Sexual Misconduct Is Intentional and Does Not
                   Constitute an "Occurrence" ............................................... 16

             (2)   The Claim is From Noncovered Professional Services,
                   Noncovered Intentional Conduct, Or Inseparably
                   Intertwined with Noncovered Conduct .............................. 18

       E.    Claim For Reimbursement ................................................... 18

V.     DEFAULT JUDGMENT REQUIREMENTS HAVE BEEN MET ......... 19

VI.    NAUTILUS HAS MET THE *EITEL* FACTORS ............................... 19

VII.   NAUTILUS' REQUESTED RELIEF ................................................ 22

VIII.  CONCLUSION ............................................................................... 23

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

3892 47092 4894-9373-2516 .v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldabe v. Aldabe*
(9th Cir. 1980) 616 F.2d 1089 .................................................................. 19

*Amex Assurance Co. v. Allstate Ins. Co.*
(2003) 112 Cal.App.4th 1246 ............................................................. 11, 12

*Antles v. Aetna Casualty & Surety Co.*
(1963) 221 Cal.App.2d 438 ...................................................................... 12

*Begun v. Scottsdale Insurance Company, Inc*
(N.D. Cal. 2013) 2013 WL 12077974 ....................................................... 12

*Blue Ridge Ins. Co. v. Jacobsen*
(2001) 25 Cal.4th 489 .............................................................................. 19

*Burlington Insurance Company v. Bay One Security*
(N.D. Cal. 2018) 2018 WL 1730425 ......................................................... 12

*Buss v. Superior Court*
(1997) 16 Cal.4th 35 ................................................................................ 19

*Coca Cola. v. Columbia Cas.*
(1992) 11 Cal.App.4th 1176 ....................................................................... 4

*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*
(1993) 14 Cal.App.4th 1595 ..................................................................... 16

*Commercial Underwriters v. Superior Court*
(2000) 84 Cal.App.4th 181 .................................................................. 12, 13

*Conlon v. U.S.*
(9th Cir. 2007) 474 F.3d 616 ...................................................................... 7

*Cranford Ins. Co., Inc. v. Allwest Ins. Co.*
(N.D. Cal. 1986) 645 F.Supp. 1440 .......................................................... 12

*Cummings v. Fire Ins. Exchange*
(1988) 202 Cal.App.3d 1407 ...................................................................... 4

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4894-9373-2516.v1

*Eitel v. McCool*
   (9th Cir. 1986) 782 F.2d 1470 .......................................................... 19, 20, 21, 22

*Elektra Entertainment Group v. Crawford*
   (C.D. Cal. 2005) 226 F.R.D. 388 ................................................................... 21

*Energy Ins. Mutual Limited v. Ace American Ins.*
   (2017) 14 Cal.App.5th 281 .................................................................... 17, 18

*Essex Ins. Co. v. Yi*
   (N.D. Cal. 1992) 795 F. Supp. 319 .............................................................. 10

*Fair Housing of Marin v. Combs*
   (9th Cir. 2002) 285 F.3d 899 ......................................................................... 5

*Freeman v. Allstate Life Ins.*
   (9th Cir. 2001) 253 F.3d 533 ......................................................................... 5

*Garamendi v. Henin*
   (9th Cir. 2012) 683 F.3d 1069 ...................................................................... 5

*Geddes v. United Fin. Grp.*
   (9th Cir. 1977) 559 F.2d 557 .................................................................. 5, 22

*Hollingsworth v. Com. Union Ins.*
   (1989) 208 Cal.App. 3d 800 ................................................................... 11, 12

*Imperial Casualty. v. Sogomonian*
   (1988) 198 Cal.App.3d 169 ................................................................... 3, 4, 5

*Jane D. v. Ordinary Mutual*
   (1995) 32 Cal.App.4th 643 ........................................................................ 17

*LA Sound v. St. Paul Fire*
   (2007) 156 Cal.App.4th 1259 ..................................................................... 4

*Landstar Ranger, Inc. v. Parth Enters., Inc.*
   (C.D. Cal. 2010) 725 F.Supp.2d 916 ...................................................... 20, 21

*Merchants Fire v. Lattimore*
   (1949) 263 F. 2d 232 ..................................................................................... 4

*Mitchell v. United National*
   (2005) 127 Cal.App.4th 457 .................................................................... 3, 4

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

iii

3892 47092 4894-9373-2516 .v1

*National Fire Ins. Co. of Hartford v. Lewis*
(D. Ariz. 2012) 898 F.Supp.2d 1132 ................................................................. 13

*Northern Insurance Co. v. Superior Court*
(1979) 91 Cal.App.3d 541 ................................................................................ 12

*Owners Ins. Co. v. Advanced Sleep Tech*
(S.D. Ga. 2022) 626 F.Supp.3d 1350 ............................................................... 15

*PepsiCo v. California Security Cans*
(C.D. Cal. 2002) 238 F.Supp.2d 1172 ................................................... 20, 21, 22

*PepsiCo v. Triunfo–Mex*
(C.D. Cal. 1999) 189 F.R.D. 431 ...................................................................... 20

*Philadelphia Indemnity v. Montes-Harris*
(2006) 40 Cal.4th 151 ........................................................................................ 4

*Phillis Morris USA v. Castworld Prods.*
(C.D. Cal. 2003) 219 F.R.D. 494 ...................................................................... 20

*Safeco Ins. Co. of Illinois v. Skar*
(D. Minn. 2011) 2011 WL 3163332 .................................................................. 13

*Scottsdale Ins. Co. v. MV Transportation*
(2005) 36 Cal.4th 643 ....................................................................................... 19

*St. Paul Fire & Marine Ins. Co. v. Love*
(Minn. 1990) 459 N.W.2d 698 .......................................................................... 13

*St. Paul Fire & Marine v. Mitchell*
(1982) 164 Ga.App. 215 .................................................................................... 13

*Torbensen v. Family Life Ins.*
(1958) 163 Cal.App.2d 401 ................................................................................. 5

*Tradewinds Escrow v. Truck Ins. Exchange*
(2002) 97 Cal.App.4th 704 ...................................................................... 11, 12, 14

*Travelers Com. Ins. Co. v. Jennifer A.*
(9th Cir. 2017) 699 F.App'x 607 ....................................................................... 16

*U.S. Specialty Ins. v. Bridge Capital*
(C.D. Cal 2007) 482 F.Supp. 2d 1164 ................................................................ 5

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

iv

*Uhrich v. State Farm*
  (2003) 109 Cal.App.4th 598 .......................................................... 13, 15, 17, 18

*Vogel v. Rite Aid*
  (C.D. Cal. 2014) 992 F.Supp.2d 998 .................................................... 22

*Warner Bros. Entm't Inc. v. Caridi*
  (C.D. Cal. 2004) 346 F.Supp.2d 1068 .................................................. 21

*Wecosign v. IFG Holdings*
  (C.D. Cal. 2012) 845 F.Supp.2d 1072 .................................................. 21

*Zipkin v. Freeman*
  (Mo. 1968) 436 S.W.2d 753 ................................................................ 13

**Statutes**

Cal. Ins. Code §§ 331 and 359 ................................................................. 4

Cal. Ins. Code § 334 ................................................................................. 4

Cal. Ins. Code § 533 ............................................................................... 16

**Other Authorities**

Fed. R. Civ. P. 8(b)(6) ............................................................................. 5

Fed. R. Civ. P. 36(a) ................................................................................ 7

Fed. R. Civ. P. 55 ................................................................................... 19

Fed. R. Civ. P. 55(a) ................................................................................ 1

Fed. R. Civ. P. 55(b)(2) .......................................................................... 19

Local Rule 55-1 ...................................................................................... 19

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

MOTION FOR DEFAULT JUDGMENT AS TO NULIFE MULHOLLAND
2:23-CV-00126-FMO-AGRx

3892 47092 4894-9373-2516 .v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

FRCP 55(a) authorizes a default judgment against a party who "fail[s] to plead or otherwise defend" a claim.  Defendant, NuLife Mulholland, LLC ("NLM") failed to file a responsive pleading to the operative First Amended Complaint ("FAC") and therefore default judgment is appropriate.

This is an insurance coverage suit.  Nautilus seeks to rescind the policy (the "Policy") issued to NLM.  If the Policy is rescinded, then judgment is appropriate on all claims.  In the alternative, Nautilus seeks a partial judgment as to all other claims to state that the underlying action (the "Underlying Action"), is not covered and reimbursement is owed.

The Policy should be rescinded as NLM concealed, misrepresented, and/or failed to disclose material information on its insurance application (the "Application").  In the Application, NLM stated that the Policy would only cover a landlord who leased a property to others and that NLM did not operate a medical facility or contract with or employ medical professionals.  These representations were false.  The underlying action asserts that NLM operated a residential and outpatient treatment/detoxification facility, and that while Dakota Pike ("Pike") was a patient there, she had a sexual relationship with NLM's CEO, John Meints ("Meints.") Pike also alleges the medical care from NLM was below the standard of care.

Evidence beyond the allegations in the Underlying Action shows that NLM operated the medical care facility and contracted or employed medical professionals.  Meints, NLM's sole managing member, has admitted these facts; NLM also admitted this in its Bankruptcy Petition filed under oath. (Nautilus obtained leave from the bankruptcy court to name NLM in this suit.)  If Nautilus had known the truth about NLM's operations, it would not have issued the Policy.  Therefore, rescission is proper.  Alternatively, if the Policy is not rescinded, Nautilus seeks

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1

3892 47092 4894-9373-2516 .v1

1    partial summary judgment that there is no duty to defend or indemnify for the
2    Underlying Action and on its reimbursement claim.

3    ## II.    <u>THE UNDERLYING ACTION</u>

4           Pike filed the Underlying Action styled: *Dakota J. Pike v. Nulife Wellness
5    Group, LLC, et al.*  against NLM, Meints, and others. (Declaration of Laura R.
6    Ramos ("Ramos Decl.") ¶ 3; **<u>Exhibit 3</u>**, pg. 68 Underlying Complaint.) The
7    Underlying Complaint  asserts that Pike checked into "NuLife Treatment Center", a
8    residential detoxification facility licensed by the California Department of Health
9    and operated by NLM for treatment of her opioid addiction. (*Id*. pg. 70 ¶ 11.) Pike
10   alleges a sexual relationship began with NLM's managing member Meints to which
11   Pike was unable to consent. (*Id.* pgs. 75-76 ¶¶ 23-25, 37). The Underlying Complaint
12   alleges the following as to Meints's action while acting as an agent for NLM in the
13   operation of the rehab center:

14          •      Meints held himself out as a licensed therapist and counselor and
15   treated, diagnosed, and cared for Pike (*Id.* pgs. 70-71 ¶ 12);

16          •      Because of "the nature of the counseling and the transference
17   phenomenon, [Pike was] induced to place special trust and confidence in defendant
18   Meints with respect to the course of the treatment." (***<u>Id.</u>***, pg. 80 ¶ 49);

19          •      Meints used his powers to engage in sexual contact knowing Pike was
20   vulnerable, and deliberately pursued Pike by an abuse of the transference
21   phenomenon with a deliberate course of conduct designed to cause her to succumb
22   to sexual advances (***<u>Id.</u>***, pg. 78 ¶ 35);

23          •      "while [Pike] was heavily medicated, Meints "confronted and
24   professed his feelings for her"; expressed his "love" for her; they engaged in sex at
25   the NLM rehab facility after he said they "needed to have sex to be sure of their
26   attraction to each other." (***<u>Id</u>***, pgs. 75-76 ¶¶ 23-25).

27
28

2

3892 47092 4894-9373-2516 .v1

III.    **PROCEDURAL HISTORY**

On January 18, 2024, Nautilus served NLM with the operative First Amended Complaint ("FAC.")  NLM's answer was due February 8, 2024.  (Ramos Decl. ⁋ 12.)  NLM did not file an answer.  The Clerk entered default as to the FAC on NLM on February 13, 2024.  [ECF 89.]

IV.    **NAUTILUS IS ENTITLED TO A DEFAULT JUDGMENT**

A.    **Rescission Is Required**

Nautilus issued the Policy NLM, effective from June 20, 2017 to June 20, 2018.  (**Exhibit 16**, pg. 404 ¶ 9, Declaration of Nick Graham ("Underwriter Decl."); **Exhibit 2**, pg. 11, Policy.)  Meints is the CEO and sole member of NLM LLC.  (**Exhibit 5**, pg. 124, request 2, Nautilus RFA S1; **Exhibit 6**, pg. 155, the Operating Agreement; *see* **Exhibit 16**, pg. 404 ¶ 4 Underwriter; **Exhibit 1**, pg. 8, the Application; Ramos Decl. ¶ 22.)

When an insured conceals or misrepresents material information on an application, the insurer has the right of rescission enforced by a court.  *Mitchell v. United National* (2005) 127 Cal.App.4th 457, 467-73; *Imperial Casualty. v. Sogomonian* (1988) 198 Cal.App.3d 169, 182 ("[when] defendants made material false statements in their application, [the insurer] has a statutory right to rescind the policy.")  C.C.P. §1689 states a party may rescind a contract under the Insurance Code.  The Insurance Code states:

> Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.  Ins. Code § 332.

> Neglect to communicate that which a party knows, and ought to communicate, is concealment.  Cal. Ins. Code § 330.  Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.  Cal. Ins. Code § 331 … If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false. Ins. Code § 359.

3

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4894-9373-2516.v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Courts have consistently held even negligent or innocent concealment warrants rescission. *See LA Sound v. St. Paul Fire* (2007) 156 Cal.App.4th 1259 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance … Courts have applied Insurance Code sections 331 and 359 to permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance.") (internal citations omitted); *Philadelphia Indemnity v. Montes-Harris* (2006) 40 Cal.4th 151, 157 (recession warranted where misstatements 'were the result of negligence, or, indeed, the product of innocence.'")  In other words, the insurer need not prove that the applicant intended to deceive the insurer.  *Mitchell*, 127 Cal.App.4th at 469 (holding an "insurer need not prove that the applicant-insured actually intended to deceive the insurer"); *LA Sound*, 156 Cal.App.4th at 1269 ("[M]isstatement or concealment of 'material' facts is ground for rescission *even if unintentional* … the insurer need not prove the insured actually intended to deceive the insurer.")

For rescission, "[m]ateriality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of disadvantages of the proposed contract, or in making his inquiries." Cal. Ins. Code § 334.  Determining materiality is "is a subjective test [wherein] the critical question is the effect truthful answers would have had on [the insurer], not on some 'average reasonable' insurer." *Imperial Cas.,* 198 Cal.App.3d at 181; *see also Coca Cola. v. Columbia Cas.* (1992) 11 Cal.App.4th 1176, 1189 fn.4.; *Cummings v. Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1414-15 fn.7.  More specifically, "[t]he test for materiality is whether the information would have caused the underwriter to reject the application, charge a higher premium, or amend the policy terms, had the underwriter known the true facts." *Mitchell*, 127 Cal.App.4th at 474; *LA Sound,* 156 Cal.App.4th at 1268-69; *see also Merchants Fire v. Lattimore* (1949) 263 F. 2d 232, 241 ("The test looks

4

3892 47092 4894-9373-2516 .v1

only to the evidence concerning the attitude or practice of the insurance company involved in the suit.")  Misrepresentations need not relate to the loss claimed by the insured (although here they do.)  *Torbensen v. Family Life Ins.*  (1958) 163 Cal.App.2d 401, 405.    Misrepresentations are also considered material if the evidence points to no other reasonable inference that can be drawn.  *U.S. Specialty Ins. v. Bridge Capital* (C.D. Cal 2007) 482 F.Supp. 2d 1164, 1168 (judgment warranted for the insurer "where the only reasonable inference to be drawn from the evidence is that the misrepresentations and omissions of the insured were material to the decision to issue the policies.")

To prove misrepresentations, an insurer may rely on its underwriters to declare that the insurer would have rejected the application had they known material facts which were misstated.  *See Freeman v. Allstate Life Ins.* (9th Cir. 2001) 253 F.3d 533, 537 (holding that an "innocent misstatement" on the application for insurance was grounds for rescission, in part, by relying on the testimony of the insurer's operations manager.)  Finally, "rescission effectively renders the policy totally unenforceable from the outset, so that there never was any coverage, and therefore no benefits are payable." *Imperial Cas. & Indem.*, 198 Cal.App.3d at 182.

### (1)    <u>The Policy Was Issued Based On Misrepresentations</u>

Once default has been entered by the Clerk, the factual allegations in the complaint, except those concerning damages, are taken as true. Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Grp.* (9th Cir. 1977) 559 F.2d 557, 560; *Garamendi v. Henin* (9th Cir. 2012) 683 F.3d 1069, 1080; *Fair Housing of Marin v. Combs* (9th Cir. 2002) 285 F.3d 899, 906.  Accordingly, the factual allegations as pled by Nautilus should be taken as true and deemed admitted by NLM.  Regardless, evidence outside of the pleadings supports this default.

NLM's Application stated:

- "nature of the business" as "lessors risk" (**<u>Exhibit 1</u>**, pg. 2, Application);

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

- "Description of Primary Operations" is "Lessors risk – insured will rent the house to a sober living facility called New [sic] Life Recovery. They will name [NuLife Mulholland] as Additional Insured" (**Exhibit 1**, pg. 2, Application);

- The leased property is 24969 Mulholland Highway, Calabasas, CA 91302 (the "Property") (**Exhibit 1**, pg. 2, Application);

- NLM answered "No" to the question, "Any medical facilities provided or medical professionals employed or contracted?" (**Exhibit 1**, pg. 7, Application);

Based on representations made in the Application, Nautilus issued the Policy. (**Exhibit 16**, pg. 405 ¶ 12.) The Policy indicates in several places that it was issued as a "lessors risk" policy:

- business description as "LRO – Dwelling" ("LRO" stands for "lessors risk") (**Exhibit 16**, pg. 405 ¶ 15, Underwriter Decl.; **Exhibit 2**, pg. 11, Policy); and

- risk classification is listed as "Dwellings (lessor's risk only)" (**Exhibit 16**, pg. 405 ¶ 15, Underwriter Decl.; **Exhibit 2**, pg. 20, Policy.)

As shown above, NLM expressly warranted that its business was leasing a building only. A lessors risk policy is not underwritten to provide coverage for risks associated with the operations of a tenant. (**Exhibit 16**, pg. 405 ¶ 13, Underwriter Decl.) As a condition of issuing a "lessors risk" policy, Nautilus requires that the tenant maintain its own commercial liability policy and that NLM be named as an additional insured on that policy. (**Exhibit 16**, pg. 405 ¶ 14, Underwriter Decl.) After Nautilus issued the Policy, it learned that NLM was operating a medical facility and contracting with or employing medical professionals at the insured location. (**Exhibit 16**, pgs. 405-06 ¶¶ 19, 20, Underwriter Decl.) Nautilus also learned that NLM was not named as an

6

3892 47092 4894-9373-2516 .v1

additional insured on any tenant's insurance (**Exhibit 16**, pg. 406 ⁋ 21,Underwriter Decl.)

Meints, as the President, CEO, and only member of the LLC of NLM, admitted in Requests for Admissions:

- that he was the sole member of Nulife Mulholland (**Exhibit 5**, pg. 124, request 2, Nautilus RFA S1; **Exhibit 6**, pg. 155, the Operating Agreement);

- NLM operated a live-in rehab or treatment facility located at the Property under license number 190996AP issued by the California Department of Health Care Services (**Exhibit 5**, pg. 124, request 1, Nautilus RFA S1);

- NLM, as part of its operations from June 20, 2017 to June 20, 2018 for a live-in rehabilitation and treatment facility located at the Property retained "medical professionals" to treat those persons who resided at the facility Services (**Exhibit 7**, pg. 157, request 7, Nautilus RFA S2; *see* Ramos Decl. ⁋ 22);

- NLM, as part of its operations from June 20, 2017 to June 20, 2018 for a live-in rehabilitation and treatment facility located at the Property retained "medical professionals" who prescribed prescription medications to persons who resided at the facility (**Exhibit 7**, pg. 157, request 8, Nautilus RFA S2);

Before he was in default, Meints failed to respond to the Requests for Admissions. (Ramos Decl. ⁋ 23.)  The requests are therefore deemed admitted by operation of law.  *See* Fed. Rule of Civ. P. 36(a); *See also, Conlon v. U.S.* (9th Cir. 2007) 474 F.3d 616 (requests for admissions are admitted for failure to respond.)

Facts consistent with Meints's admissions regarding NLM's operations are also evidenced by other documents.  On February 28, 2018, during the Policy's period, Meints, on behalf of NLM, filed with the California Secretary of State a

7

3892 47092 4894-9373-2516 .v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Statement of Information which described NLM's type of business as "Health care". (**Exhibit 13**, pg. 265, SOS Statement of Info; *See* Ramos Decl. ℗ 20.) NLM filed a Voluntary Petition for Bankruptcy which is signed under penalty of perjury by Meints in which NLM admitted that it operated under a "dba" of NuLife Treatment Center which was formally known as ("FKA") NuLife Recovery (**Exhibit 4**, pg. 88, Bankruptcy Petition; Ramos Decl. ℗ 5); that the nature of NLM's business was "Substance abuse and mental health rehabilitation" (**Exhibit 4**, pg. 112, Bankruptcy Petition); and that the location where it provided "Substance abuse and mental health rehabilitation" was the Property listed in the Policy and Application: "24969 Mulholland Hwy, Calabasas, Ca 91302" (**Exhibit 4**, pg. 112, Bankruptcy Petition; **Exhibit 1**, pg. 2, Application; **Exhibit 2**, pgs. 11, 20, Policy).

Additionally, NLM provided numerous verified responses to written discovery and produced documents in the Underlying Action acknowledging that NLM operated as a healthcare treatment facility that employed medical professionals. (**Exhibit 10**, NuLife Underlying Responses to Form Rogs; **Exhibits 22-25**, Underlying Responses to RFP; **Exhibit 8**, JC Quality Report; **Exhibit 11**, Employee Handbook; **Exhibit 12**, Employment Contracts; and **Exhibit 14**, Policies and Procedures Manual; *see* Ramos Decl. ℗℗ 17-19.) NLM stated that all "treatment rendered by it to [Pike] was appropriate." (**Exhibit 10**, pg. 195, response 15.1a, NuLife Underlying Responses to Form Rogs.) Both NLM and Meints (as the managing member/CEO) identified as NLM's "employees" medical professionals such as M.D.s, Licensed Marriage and Family Therapists, Nurse Practitioners, and Licensed Vocational Nurses. (**Exhibit 9**, pgs. 169, 171, 174, responses 2.6, 2.11, 12.1, Meints Underlying Responses to Form Rogs; **Exhibit 10**, pgs. 191, 196, responses 12.1, 15.1b, NLM Underlying Responses to Form Rogs.) NLM produced a healthcare accreditation Quality Report issued by the Joint Commission to "NuLife Mulholland DBA: Nulife Treatment Centers".

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  (**Exhibit 8**, pg. 162, JC Quality Report.)  NLM produced numerous documents

2  bearing "NuLife Treatment Centers" insignia including an Employee Handbook, a

3  Policies and Procedures Manual, and several employment contracts for medical

4  professional positions including Licensed Vocational Nurse and Alcohol & Drug

5  Counselor.  (**Exhibit 11**, pg. 200, Employee Handbook; **Exhibit 14**, pg. 266,

6  Policies and Procedures Manual; **Exhibit 12**, pgs. 242-64, Employment Contracts;

7  **Exhibit 12**, pgs. 261-62, Employment Contracts; **Exhibit 12**, pgs. 253-54,

8  Employment Contracts.)  As noted above, NLM operated under the fictitious name

9  "NuLife Treatment Center", so any documents attributable to "NuLife Treatment

10 Center" are likewise attributable to NuLife Mulholland. (**Exhibit 10**, pg. 188,

11 response 3.6a, NuLife Underlying Responses to Form Rogs; **Exhibit 8**, pg. 162,

12 JC Quality Report.)  Accordingly, the documents produced by NLM unequivocally

13 show that NLM was operating substance abuse recovery facility that employed or

14 contracted with medical professionals.

15      In sum, the evidence indisputably shows that NLM operated a healthcare

16 facility in the form of a substance abuse recovery center at the Property which

17 employed or contracted with medical professionals.  Had these true facts been

18 disclosed, Nautilus would not have issued the Policy, even under different terms

19 or a higher premium. (**Exhibit 16**, pg. 406 ¶¶ 22-24, Underwriter Decl.)  Nautilus

20 does not issue commercial general liability policies such as the one at issue here to

21 insureds which operate medical or health care facilities or to insureds which

22 employ and/or contract with medical professionals. (**Exhibit 16**, pg. 407 ¶¶ 26-27,

23 Underwriter Decl.)   Such risks are outside Nautilus' underwriting guidelines.

24 (**Exhibit 16**, pg. 407 ¶¶ 26-27, Underwriter Decl.)

25      Accordingly, Nautilus is entitled to have the Court deem the Policy

26 rescinded *ab initio*.

27  **B.    If the Policy Is Rescinded Judgment is Warranted On All Claims**

28      If the Court deems the policy rescinded *ab initio*, then judgment is warranted

9

on all claims as it is as if no policy were issued at all.  Therefore, there could be no duty to defend or indemnify the Underlying Action.  Declaratory Relief is the appropriate cause of action for a finding that the insurer has no duty to defend and/or indemnify under a liability policy.  *See Essex Ins. Co. v. Yi* (N.D. Cal. 1992) 795 F. Supp. 319, 322. If the Policy is rescinded, judgment on Nautilus' reimbursement claim against NLM is also appropriate.

## C.    The Professional Services Exclusion Bars Coverage For The Underlying Action

In the alternative, if the Policy is not rescinded, partial judgment should be granted as to the duty to defend and indemnify, and as to reimbursement because the coverage is excluded under the Professional Services Exclusion.  The Underlying Action arose from NLM's failures in operating a medical facility with medical professionals for drug rehabilitation. (**Exhibit 3**, pg. 68-87, Underlying Complaint.) This is a professional service excluded by the Policy.  The Policy contains an endorsement excluding coverage for "Any and all professional services of the named insured." (**Exhibit 2**, pgs. 12, 39, the Policy.)  It excludes coverage for damages "due to the rendering of or failure to render any professional service." (**Exhibit 2**, pgs. 12, 39, the Policy.)  Furthermore, the exclusion applies:

> "… even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

(**Exhibit 2**, pg. 39, the Policy.)

As stated above, NLM admitted that its business is "health care". (**Exhibit 13**, pg. 265, SOS Statement of Info.) The NLM Bankruptcy Petition admits that it operated under a "dba" of Nu Life Treatment Center which was formally known as ("FKA") NuLife Recovery; and the nature of its business was "Substance abuse and mental health rehabilitation" and it conducted that business at the insured property.

10

(**Exhibit 4**, pg. 88, 112, Bankruptcy Petition.)  In underlying discovery, NuLife stated that all "treatment rendered by it to [Pike] was appropriate."  (**Exhibit 10,** pg. 195, response 15.1a, NuLife Underlying Responses to Form Rogs.)  In underlying discovery, NLM and Meints identified numerous medical professionals as NLM's "employees".  (**Exhibit 9**, pgs. 169, 171, 174, responses 2.6, 2.11, 12.1, Meints Underlying Responses to Form Rogs; **Exhibit 10,** pgs. 191, 196, responses 12.1, 15.1b, NuLife Underlying Responses to Form Rogs.)  The JC Quality Report accredits "NuLife Mulholland DBA: Nulife Treatment Centers" as a healthcare provider.  (**Exhibit 8**, pg. 162, JC Quality Report.)  Numerous other documents produced by NLM in the Underlying Action show that it provided healthcare services.  (**Exhibit 11**, Employee Handbook; **Exhibit 12**, Employment Contracts; and **Exhibit 14**, Policies and Procedures Manual.)  Finally, the basis for the Underlying Action is Pike's medical treatment for addiction at the NLM's rehab center. (**Exhibit 3**, pgs. 68-87, Underlying Complaint.)

Under California law, the term "professional services" as used in exclusions is not narrowly circumscribed to activities traditionally considered to be professions, such as medicine, law, or engineering, but generally signify an activity done for remuneration as distinguished from a mere pastime, and for which some training or experience is required. *See, e.g., Hollingsworth v. Com. Union Ins.* (1989) 208 Cal. App. 3d 800 (injury arising from ear-piercing service at a retail cosmetic store arose from a "professional service" within meaning of exclusion). "Professional services" are those "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." The definition is broader than "profession," and encompasses services performed for remuneration. *Tradewinds Escrow v. Truck Ins. Exchange* (2002) 97 Cal.App.4th 704, 713. "Professional services" is broad and even where, as here "professional services" is not defined. *See Amex Assurance Co. v. Allstate Ins. Co.* (2003) 112 Cal.App.4th

11

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1246, 1252 ("ordinary meaning of the word 'professional' is no longer limited to the 'learned professions,' but has a broader scope that includes skilled services such as plumbing.") Here, of course, the professional services in fact were medical services which are traditionally considered a professional service.

Professional service exclusions have applied to a wide variety of business services performed, including medical and therapeutic services. *See, e.g.*, *Hollingsworth, supra*; *Commercial Underwriters v. Superior Court* (2000) 84 Cal.App.4th 181 (coverage barred for a therapist, which included a sexual relationship and manipulative conduct); *Amex Assurance Co. v. Allstate Ins. Co.* (2003) 112 Cal.App.4th 1246, 1252 (coverage barred for a plumber); *Tradewinds Escrow supra,* 97 Cal.App.4th at 713 (coverage barred for an escrow agent); *Northern Insurance Co. v. Superior Court* (1979) 91 Cal.App.3d 541, 544 (negligent performance of abortion on wrong patient due to clerical error in mixing up patient charts); *Antles v. Aetna Casualty & Surety Co.* (1963) 221 Cal.App.2d 438, 439 (coverage barred for a chiropractor); *Burlington Insurance Company v. Bay One Security* (N.D. Cal. 2018) 2018 WL 1730425 (failure by security services to provide adequate protection for claimant); *Begun v. Scottsdale Insurance Company, Inc* (N.D. Cal. 2013) 2013 WL 12077974 (services performed by payroll agent).

Here, the drug rehabilitation services provided by NLM qualify as "professional services" because they are medical in nature and/or involve specialized rehabilitative and therapeutic services that were offered to Pike for remuneration and the benefit of the NLM's business.

### (1)  **Injury From Sexual Misconduct Is Excluded Under The Professional Services Exclusion**

The Policy excludes damages for bodily injury for the "rendering" and "failure to render" "professional services". (**Exhibit 2**, pg. 39, the Policy.)  Courts have held that this language bars coverage arising from sexual misconduct due to the rendering or failure to render professional services. *See, e.g., Cranford Ins. Co.,*

12

Selman Leichenger Edson Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4894-9373-2516 .v1

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

*Inc. v. Allwest Ins. Co.* (N.D. Cal. 1986) 645 F.Supp. 1440; *Safeco Ins. Co. of Illinois v. Skar* (D. Minn. 2011) 2011 WL 3163332; *National Fire Ins. Co. of Hartford v. Lewis* (D. Ariz. 2012) 898 F.Supp.2d 1132; *Commercial Underwriters Ins. v. Superior Court* (2000) 84 Cal.App.4th 181.

Courts have also held that an insured's abuse of the transference phenomenon – a phenomenon on which Pike bases her claims (**Exhibit 3**, pgs. 73, 78, 80, 82 ¶¶ 14x-14z, 14aa-14cc, 36-37, 49, 59, Underlying Complaint) – constitutes a failure to render professional services. *See St. Paul Fire & Marine Ins. Co. v. Love* (Minn. 1990) 459 N.W.2d 698 ("we believe the sexual contact between the therapist and patient arising from the [transference] phenomenon may be viewed as the consequence of a failure to provide proper treatment of the transference. In other words, the patient's claim results from the providing of improper professional services or the withholding of proper services."); *see also Zipkin v. Freeman* (Mo. 1968) 436 S.W.2d 753; *Uhrich v. State Farm* (2003) 109 Cal.App.4th 598, as modified); *St. Paul Fire & Marine v. Mitchell* (1982) 164 Ga.App. 215, 218-19.

Meints's sexual misconduct was a consequence of NLM's "rendering of" professional services since this misconduct stemmed from his interactions with Pike, in his professional capacity, while working at NLM's medical rehabilitation center while Pike was a patient. (**Exhibit 3**, pg. 68-87, Underlying Complaint.) Meints's sexual misconduct took place while Pike was under the care of the NLM. (**Exhibit 3**, pg. 68-87, Underlying Complaint.) In addition, Meints's sexual misconduct can be classified as a consequence of the NLM's "failure to render" professional services since such misconduct—including without limitation directing that Pike receive an unnecessary amount of suboxone, abusing the transference phenomenon, having sexual contact with a patient—is indicative of inadequate services that Pike had intended to receive from NLM. (**Exhibit 3**, pgs. 75-80, 82, 84-86 ¶¶ 23-27, 30, 35-37, 44, 58, 64, 72, 79, 81, Underlying Complaint.) In sum, Meints's sexual misconduct constitutes a failure to perform proper the "professional service" of

13

3892 47092 4894-9373-2516.v1

treatment of rehabilitative and therapeutic services.

**(2)**    **Pike's Alleged Injury Due to Non-Sexual Misconduct Is An
Excluded Professional Service**

Pike's allegations of "negligent and careless treatment" by the NLM and
Meints fall under the Professional Services Exclusion as well.  (**Exhibit 3**, pgs. 71-
74 ⁋ 14, Underlying Complaint.) These allegations involve without limitation a
failure to provide medical services including the NuLife defendants' "failure to
completely and accurately assess Plaintiff's need for services," "failure to
completely and accurately diagnose Plaintiff," and "prescription of inappropriate
medications to Plaintiff." (**Exhibit 3**, pgs. 71-74 ⁋⁋ 14, 14i-14j, 14l, Underlying
Complaint.)

The exclusion applies if the alleged injury is incurred during the performance
of professional services. *See, Tradewinds Escrow, supra,* 97 Cal.App.4th at 713.
Here, the professional services received by Pike were performed by NLM including
Meints, throughout her time at the facility:

> MEINTS participated in weekly staff member meetings where patient
> care, including Plaintiffs, was discussed, and that MEINTS even took
> part in decisions regarding medication and all of the key aspects of
> Plaintiffs treatment. He became the most significant "counselor" for
> Plaintiff, and she trusted him more than any of the clinicians at the
> facility. (**Exhibit 3**, pgs. 71-72 ⁋ 12.)

Pike has asserted that "at all relevant times," including "even after [Pike] left the
Treatment Center," "[Meints] held himself out to be part of Plaintiff's clinical team."
(**Exhibit 3**, pgs. 71-72 ⁋ 12.)  In addition, Pike alleges that Meints was involved in
handling the details of her treatment even after she left the treatment center:

> "[T]here were no clinical interactions, insights, or treatment by
> MEINTS that were any different than her interaction with licensed
> professionals at the Treatment Center. MEINTS would make insights,
> suggest behaviors, suggested treatment strategies, and basically

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

14

3892 47092 4894-9373-2516 .v1

practicing [sic] psychology…This continued even after Plaintiff left the Treatment Center." (**Exhibit 3**, pgs. 71-72 ⁋ 12.)

The injury to Pike occurred during the performance of professional services, even to the extent injury occurred after Pike left NLM. Coverage is barred under the Professional Services Exclusion due to the underlying defendants' failure to appropriately address the transference phenomenon. *See Uhrich v. State Farm*, *supra*, 109 Cal.App.4th at 620 (professional services exclusion applied to insured psychologist's failure to prevent patient's transference phenomenon that continued even after severance of the professional relationship).Accordingly, coverage is entirely excluded under the Professional Services Exclusion.

Importantly, even claims of ordinary negligence are considered excluded professional services when the conduct is intertwined with that professional services. In *Owners Ins. Co. v. Advanced Sleep Tech* (S.D. Ga. 2022) 626 F.Supp.3d 1350, 1357-58 the court applied the professional services exclusion to bar coverage when patient at the clinic fell while at the clinic. The court held "none of the allegedly ordinarily negligent actions would have even been needed but for the … [the] status as a patient [at the location undergoing treatment], which is undoubtedly a professional service." [cite]. The actions underlying the ordinary negligence claim were professional services because they resulted, inseparably, from professional services either rendered or failed to be rendered by  [the insured.]" [quotes omitted emphasis added]. *Id.* As such, all negligent conduct resulted, and is inseparable from, the failure to render the professional services at the rehab clinic, which is the gravamen of the underlying complaint, including without limitation allegations in paragraph 14. Therefore, all non-intentional acts are barred by the professional services exclusion

### D.  Coverage is Barred As All Conduct is Intentional

As stated above, all the allegations regarding the alleged negligent acts are excluded. As an alternative grounds as to why there is no coverage, all the sexual

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4894-9373-2516 .v1

misconduct from Meints are excluded intentional acts. The Policy only covers bodily injury caused by an "occurrence," which is  "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (**Exhibit 2**, pg. 35, Policy.)  Under Insurance Code § 533, insurers are not liable for losses caused by the willful act(s) of the insured.

### (1)    Sexual Misconduct Is Intentional and Does Not Constitute an "Occurrence"

Under California law, sexual misconduct as the basis for infliction of emotional distress, battery, and sexual harassment are willful acts and not insurable. *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1603; *see also Travelers Com. Ins. Co. v. Jennifer A.* (9th Cir. 2017) 699 F. App'x 607, 609 (acts of unprotected sex with other women that placed claimant in fear of contracting HIV—the conduct for which liability was imposed—were deliberate and therefore not accidents within the meaning of the policy).

In *Coit,* the insured's executive shareholder made numerous unwelcome advances including "[attempts to] involve her in a game of strip poker, [questions] about her underwear, and [attempts] to get her into a hot tub." *Coit Drapery*, *supra*, 14 Cal.App.4th at 1603. The executive also invited the claimant to his private office during business hours, asked the claimant to pour him a drink, squeezed the claimant after asking for a "passionate hug," then made sexual advances on the claimant. *Id.* The court reasoned that "California law and applicable precedents do not allow the characterization of such clearly intentional and willful sexual misconduct as merely negligent or nonwillful, so as to trigger insurance coverage." *Id.* Ins. Code section 533, "and the public policy it represents, bar the attempt to shift liability for intentional sexual harassment and associated employment-related torts (claims of wrongful discharge, infliction of emotional distress, battery, and sexual assault) to an insurer." *Id.* at 1603.

Moreover, where allegations of negligent conduct are "inseparably

16

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  intertwined" with noncovered intentional conduct, there is no coverage. *Jane D. v.*
2  *Ordinary Mutual* (1995) 32 Cal.App.4th 643, 653; *Uhrich v. State Farm*, *supra*, 109
3  Cal.App.4th 598 ("In theory, in the course of his malicious campaign [the insured]
4  also may have committed nonmalicious torts. But where allegations are 'inseparably
5  intertwined' with noncovered intentional conduct, there is no coverage."); *Energy*
6  *Ins. Mutual Limited v. Ace American Ins.* (2017) 14 Cal.App.5th 281, 298-99 ("The
7  underlying … actions theoretically raise some claims that do not arise out of
8  [insured's] professional services. However, where allegations in a complaint are
9  'inseparably intertwined' with noncovered conduct, there is no coverage even where
10 the nature of a particular claim appears to be covered.")

11       In *Jane D*, a priest misused his counseling relationship to induce the claimant
12 to project onto the priest feelings of affection, love, and sexual attraction, leading to
13 the claimant to have sex with the priest, forming the basis for causes of action for
14 negligence, negligent infliction of emotional distress, and breach of fiduciary duty
15 against the priest. *Id.* at 646. The court held that the allegations of negligent
16 counseling were inseparable from the sexual misconduct. *Id.* at 653 ("obtaining
17 information about plaintiff during counseling and using this information and
18 misusing counseling techniques to create transference and to control and induce
19 plaintiff's behavior" was "inseparably intertwined" with counselor's sexual
20 misconduct.)

21       Here, Pike's allegations are factually similar to those allegations of use of a
22 counseling relationship in *Jane D* that was used to induce a sexual relationship. Pike
23 alleges that she was given drugs which exacerbated her feelings of vulnerability,
24 during which time Meints groomed her for a sexual relationship through counseling,
25 the transference phenomenon, and his position of power as the person in charge of
26 the treatment facility. (**Exhibit 3**, pgs. 70, 74, 75-76, 78-80, 82, 84 ¶¶ 12, 14ii-14jj,
27 21-23, 35-37, 49, 59, 70, 74, 79.) Pike's complaint makes clear that Meints's actions
28 including without limitation flirtation while Pike was heavily medicated, paying

17

extra attention to Pike, attending Pike's therapy sessions, confessing his feelings for Pike while she was still a patient at the facility, exchanging love letters, and revealing his knowledge of her detailed personal information, were part of a deliberate course of conduct designed to cause Pike to succumb to Meints's sexual advances. (**Exhibit 3**, pgs. 75-76, 78 ¶¶ 23-24, 26, 36.) As such, Meints's conduct was part of a design to provide him with "an isolated, alienated, more compliant victim" of his sexual misconduct, such that any allegations of non-intentional negligence were inseparably intertwined with Meints's intentional sexual misconduct.

### (2)    The Claim is From Noncovered Professional Services, Noncovered Intentional Conduct, Or Inseparably Intertwined with Noncovered Conduct

Again, where allegations are inseparably intertwined with noncovered conduct, there is no coverage even where claims appear to be covered. *Uhrich v. State Farm*, *supra*, 109 Cal.App.4th at 614-15 ("where allegations are 'inseparably intertwined' with noncovered intentional conduct, there still is no coverage.") *Energy Ins.*, *supra,* 14 Cal.App.5th at 298-99 ("The underlying … actions theoretically raise some claims that do not arise out of [insured's] professional services. However, where allegations in a complaint are 'inseparably intertwined' with noncovered conduct, there is no coverage even where the nature of a particular claim appears to be covered.")  Accordingly, even if some of Pike's claim could be attributable to nonprofessional conduct, such claims would either be noncovered intentional sexual misconduct or inseparably intertwined with noncovered conduct.

### E.    Claim For Reimbursement

Before it became a suspended company Nautilus defended NLM in the Underlying Action under a reservation of rights, which includes the right to reimbursement for defense fees expended but not owed. (**Exhibit 18**, ¶ 26). Nautilus has incurred $61,761.54 to defend NLM which is the sum of attorney's fees and costs paid by Nautilus shown in Exhibit 21. (**Exhibit 17**, pg. 410 ¶ 5, 10, Declaration

18

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

of Jeffrey Kagan; **Exhibit 21**, pgs. 441-42, NuLife Mulholland Costs.)  If the Policy
is rescinded or if there is no duty to defend, then Nautilus never owed these fees and
is entitled to reimbursement. *Buss v. Superior Court* (1997) 16 Cal.4th 35, *Scottsdale
Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643; *Blue Ridge Ins. Co. v.
Jacobsen* (2001) 25 Cal.4th 489.

## V.    DEFAULT JUDGMENT REQUIREMENTS HAVE BEEN MET

FRCP 55  authorizes the Court to enter a default judgment against a party who
"fail[s] to plead or otherwise defend" a claim.  The requirements of Rule 55 are met:

- On January 8, 2024, NLM was served with the First Amended
  Complaint via the Secretary of State and proof of service was filed with
  the Court [ECF 79];
- NLM's response to the FAC was due February 8, 2024;
- NLM did not respond to the FAC (Ramos Decl. ¶ 12);
- On February 13, 2024, the Clerk entered default as to NLM;  [ECF 89.]

Nautilus has complied with Local Rule 55 with a declaration which states:

(a) A default was entered as to NLM [ECF 89];

(b) Default was as to the FAC, which forms the basis for this Motion (*See*
Ramos Decl. ¶¶  9, 14);

(c) NLM is a company, not an individual, and therefore is not a minor,
incompetent, in military service, or otherwise exempt under the Soldier and Sailors
Civil Relief Act at 50 U.S.C. App. § 521 (Ramos Decl. ¶ 28); and

(d) NLM has never appeared in this action and therefore notice of this motion
is not required pursuant to FRCP 55(b)(2) (Ramos Decl. ¶ 29.)

Nautilus submits the Declaration of Laura R. Ramos as required by Local Rule
55-1.

## VI.    NAUTILUS HAS MET THE *EITEL* FACTORS

The entry of default judgment is within a district court's discretion.  *Aldabe v.
Aldabe* (9th Cir. 1980) 616 F.2d 1089, 1092. "In applying this discretionary

standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo–Mex* (C.D. Cal. 1999) 189 F.R.D. 431, 432. The Ninth Circuit has set forth seven factors listed below (the "*Eitel* factors") for courts to consider whether to enter default judgment. *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1471-72.

### 1. Prejudice to Plaintiff

The first *Eitel* factor requires the Court to consider whether withholding default judgment would prejudice the plaintiff. On a motion for default judgment, prejudice exists where the plaintiff has no "recourse for recovery" other than default judgment. *Phillis Morris USA v. Castworld Prods.* (C.D. Cal. 2003) 219 F.R.D. 494, 499. Here, NLM has not moved to set aside a default. Accordingly, if a default judgment were not entered, Nautilus would be left with no alternative path to recovery. *See PepsiCo v. California Security Cans* (C.D. Cal. 2002) 238 F.Supp.2d 1172, 1177 (finding prejudice if default not entered for injunctive relief.) The first factor supports an entry of a default judgment.

### 2 & 3. Merits of Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors are usually analyzed together. *PepsiCo. v. Cal. Security, supra*, 238 F. Supp. 2d at 1175. Nautilus refers to the above sections of this brief wherein it provides facts and authorities to support its claims against NLM. Thus, second and third *Eitel* factors support an entry of default judgment.

### 4. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court must balance "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This requires that the Court assess whether the recovery sought is proportional to the harm caused by the defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.* (C.D. Cal. 2010) 725 F.Supp.2d 916, 921. Nautilus' only monetary claim as set forth above is reimbursement of defense fees incurred to defend NLM in the Underlying Action. This totals $61,761.54. (**Exhibit 17**, pg. 410 ¶ 10; **Exhibit 21**, pgs. 441-42.) The fourth *Eitel* factor supports an entry of

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

20

3892 47092 4894-9373-2516.v1

default judgment.

### 5.    Possibility of Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*., 238 F.Supp.2d at 1177.  When a plaintiff has "supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment." *Landstar Ranger, Inc. v. Parth Enterprises* (C.D. Cal. 2010) 725 F.Supp.2d 916, 922; *see also Elektra Entertainment Group v. Crawford* (C.D. Cal. 2005) 226 F.R.D. 388, 393 ("Because all allegations in a well pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").  Here, Nautilus has supported its claims with ample admissible evidence, most of which are admissions by NLM and Meints in numerous documents including without limitation in the Petition for Bankruptcy signed under penalty of perjury. (**Exhibit 4**, pgs. 88, 112, Bankruptcy Petition).  NuLife has made no attempt to challenge these facts.  Thus, there is no possibility of a factual dispute such to preclude judgment.

### 6.    Excusable Neglect

Under the sixth *Eitel* factor, courts consider the issue of excusable neglect.  "This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign v. IFG Holdings* (C.D. Cal. 2012) 845 F.Supp.2d 1072, 1082; *see also Warner Bros. Entm't Inc. v. Caridi* (C.D. Cal. 2004) 346 F.Supp.2d 1068, 1072 ("A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer.") (quote omitted).  Here, NLM has actual knowledge of this lawsuit because it's agent was served the initial Complaint.  [ECF No. 12] and NLM sole managing member/CEO, Meints, appeared and filed an answer to the initial complaint.  [ECF No. 16.]  NLM was also served with the FAC.  [ECF Nos.

21

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

79, 62-1.]

       7.    <u>The Policy Favoring Decisions on the Merits</u>

Finally, the seventh *Eitel* factor requires courts to consider whether the court's strong preference for deciding cases on the merits should preclude an entry of default judgment. *Eitel*, 782 F.2d at 1472; *Pepsi Co.*, 238 F.Supp.2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.") However, when defendants fail to appear and defend, the policy of favoring decisions on the merits does not preclude the entry of default judgment. *Vogel v. Rite Aid* (C.D. Cal. 2014) 992 F.Supp.2d 998, 1013. Here, NLM had notice and opportunity take steps to be able to defend this suit. In addition, based on the arguments above, the Court has the basis to make a determination on the merits as Nautilus has proved its case.

## VII.   <u>NAUTILUS' REQUESTED RELIEF</u>

Once the right to a default judgment is established, the plaintiff seeking default judgment must then establish that the requested relief is appropriate. *Geddes v. United Fin. Grp.* (9th Cir. 1977) 559 F.2d 557, 560. Nautilus seeks four claims:

      1.  Rescission of the Policy;

      2.  A declaration that Nautilus owes no duty to defend NuLife Mulholland in the Underlying Action;

      3.  A declaration that Nautilus owes no duty to indemnify NuLife Mulholland in the Underlying Action; and

      4.  Reimbursement of defense fees.

As discussed above, relief is warranted on all grounds under the evidence presented.

3892 47092 4894-9373-2516 .v1

## VIII. **CONCLUSION**

Based on the above, Nautilus requests that the Court grant this Motion and enter default judgment as to NuLife Mulholland.

Respectfully Submitted,

DATED: February 15, 2024

SELMAN LEICHENGER EDSON HSU
NEWMAN & MOORE LLP


By: /s/*Laura R. Ramos*
    ELDON S. EDSON
    LAURA R. RAMOS
    DAVID S. ELSTNER
Attorneys for Plaintiff,
NAUTILUS INSURANCE COMPANY

MOTION FOR DEFAULT JUDGMENT AS TO NULIFE MULHOLLAND
2:23-CV-00126-FMO-AGRx

3892 47092 4894-9373-2516 .v1

1

## CERTIFICATE OF COMPLIANCE

2          The undersigned, counsel of record for Nautilus Insurance Company

3   certifies that this brief contains 6,850 words, which complies with the word limit of

4   L.R. 11-6.1.

5

6   DATED:  February 15, 2024          SELMAN LEICHENGER EDSON HSU
                                       NEWMAN & MOORE LLP
7

8                                      By: /s/*Laura R. Ramos*
                                           ELDON S. EDSON
9                                          LAURA R. RAMOS
                                           DAVID S. ELSTNER
10                                     Attorneys for Plaintiff,
                                       NAUTILUS INSURANCE COMPANY
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR DEFAULT JUDGMENT AS TO NULIFE MULHOLLAND
2:23-CV-00126-FMO-AGRx

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3892 47092 4894-9373-2516 .v1